LA FOURNIER, Plaintiff in error, V. STATE, Defendant in error.

Supreme Court

*No. 76–580–CR. Submitted on briefs November 29, 1978.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 746.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Melvin F. Greenberg,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John M. Schmolesky,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J. After the trial court refused to suppress the evidence of heroin found on his person, a jury found James La Fournier, the defendant, guilty of possession of heroin with intent to deliver in violation of secs. 161.14(3)(k) and 161.41(1m)(a), Stats. 1975. The defendant then sought post-conviction relief again asserting that the seizure of the evidence without a search warrant violated his constitutional rights and that the evidence should therefore have been suppressed.[1] The issue presented on appeal is whether

---

[1] Sec. 974.06(1), (2), Stats., relating to post-conviction procedure, provides:

"(1) A prisoner in custody under sentence of a court claiming the right to be released upon the ground that the sentence was imposed in violation of the U. S. constitution or the constitution or laws of this state, that the court was without jurisdisction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"(2) A motion for such relief is a part of the original criminal action, is not a separate proceeding and may be made at any time. The supreme court may prescribe the form of the motion."

In its memorandum decision the trial court stated that because the motion under sec. 974.06, Stats., was filed beyond the ninety-day period for appeal it lacked jurisdiction. We agree with the position of the State and the defendant that the ninety-day time period is not relevant where a post-conviction motion claiming a violation of constitutional rights is filed pursuant to sec. 974.06,

evidence introduced at the defendant's trial was seized in violation of the Fourth[2] and Fourteenth Amendments[3] of the United States Constitution and Art. I, sec. 11 of the Wisconsin Constitution.[4] We affirm the judgment of conviction and the order denying the post-conviction motion.

Stats. The statute itself expressly permits a post-conviction motion to be made at any time. As we pointed out in *Loop v. State,* 65 Wis.2d 499, 502, 222 N.W.2d 694 (1974), a sec. 974.06 motion is not a substitute for appeal, but certain issues of constitutional dimension may be raised via such a motion as well as by direct appeal. In this case the defendant is obviously raising an error of constitutional dimension which is properly brought pursuant to this section.

However, despite its opinion that it lacked jurisdiction, the trial court did give full consideration to the merits of the defendant's motion and arrived at a decision thereon. We are therefore able to review the question on the merits.

[2] Fourth Amend., U. S. Const.:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[3] Fourteenth Amend., U. S. Const., sec. (1):

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[4] Art. I, sec. 11, Wis. Const.:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The facts relating to the seizure of the evidence are not in dispute and were set forth at the hearing on the motion to suppress evidence. Officer Desmond Weiland did not testify but the parties stipulated that he would testify as follows: At about 3:30 p.m. on June 1, 1975 he received a telephone call reporting a drug overdose at an address in Racine; he went to that address, went into the basement recreation room and saw a woman, seriously ill and apparently a victim of drug overdose; he saw drug paraphernalia, syringes and spoons on the floor; and he radioed the police department that he was taking the woman to the hospital and that the police should "control" the crime scene because he thought there probably would be a fatality.

Officer Guy Nelson testified that at approximately 3 p.m. on June 1, 1975, he monitored a call from Officer Weiland about a drug overdose victim in critical condition. Officer Weiland said that there was contraband on the basement floor and requested a patrolman and an "evidence technician." Officer Nelson, an evidence technician for the Racine Police Department, responded to the call and went to "secure a crime scene."[5] As he drove to the house he saw a rescue squad and Officer Weiland's car transporting the victim to the hospital.

Officer James Eckhoff also responded to a police call about an overdose victim found in the basement, but he did not know of the contraband in the basement. Officer Eckhoff arrived on the scene after Officer Nelson.

Officer Saul Gordon, also an evidence technician, testified that he too responded to a police radio call that a drug overdose victim had been found and that an evi-

---

[5] Officer Nelson testified that the phrase "secure a crime scene" "means preventing anyone from leaving and preserving it to the best of my ability, any physical evidence on the scene."

Officer Gordon testified that an "evidence technician" is an officer especially designated to gather, preserve and package evidence at a crime scene.

dence technician was wanted. When Officer Gordon arrived, Officers Nelson and Eckhoff were in the kitchen with Kevin Singer, the renter of the single family house. Singer did not testify but the parties stipulated that if he were called he would testify that he did not give the officers consent to enter the premises. The officers did not have a warrant to search the residence.

The three officers proceeded to the basement recreation area and found the defendant sitting on a davenport. He was lethargic and difficult to understand. Officer Gordon asked him how he felt, and the defendant responded "Fine man, I just shot up." On the floor near the defendant were two syringes and a spoon. Officer Gordon told the defendant he was under arrest for possession of contraband and while "patting him down" found three plastic bags which later proved to contain heroin. The plastic bags were put into evidence at defendant's trial and were the subject of the suppression hearing.

La Fournier asserts that the entry of the three officers was in contravention of the constitution; that during the illegal entry the contraband was discovered; that the contraband supported the finding of probable cause to arrest him; that the arrest occasioned his search; and that during the search the heroin was seized. Thus the heroin is the fruit of an illegal entrance. Relying on *Wong Sun v. United States,* 371 U.S. 471 (1963), La Fournier argues that the seizure of the heroin is tainted and the bags of heroin should not be admitted into evidence.

The Fourth Amendment proscribes unreasonable searches and seizures; it secures the individual's "privacy against arbitrary intrusion by the police." *Wolf v. Colorado,* 338 U.S. 25, 27 (1949). The United States Supreme Court has stated that the "cardinal principle [is]

that 'searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States,* 389 U.S. 347, 357 . . . ." *Mincey v. Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed.2d 290, 298, 299 (1978). The exceptions to the requirement that a search warrant be obtained are "jealously and carefully drawn." *Jones v. United States,* 357 U.S. 493, 499 (1958).

In *State v. Pires,* 55 Wis.2d 597, 604, 201 N.W.2d 153 (1972) we have recognized an "emergency rule exception," that is that neither the Fourth Amendment nor the Wisconsin Constitution bars peace officers from making warrantless entries where they reasonably believe that a person within is in need of aid.[6] The justification of the emergency exception is the compelling need for immediate action by peace officers to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that

[6] The United States Supreme Court has specifically "recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed.2d 290, 300 (1978). *See also Warden v. Hayden,* 387 U.S. 294 (1967); *Wayne v. United States,* 115 U.S. App. D.C. 234, 318 F.2d 205 (1963), *cert. den.* 375 U.S. 860 (1963); *United States v. Barone,* 330 F.2d 543 (2d Cir. 1964), cert. den. 377 U.S. 1004 (1964); *People v. Sirhan,* 7 Cal.3d 710, 102 Cal. Rptr. 385, 497 P.2d 1121 (1972).

Similarly in the regulatory field, the United States Supreme Court has permitted prompt inspections without a warrant in emergency situations. *Michigan v. Tyler,* 98 S. Ct. 1942, 1950 (1978) . (burning building). *See also* Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment,* 22 Buff. L. Rev. 419 (1972); 2 LaFave, *Search & Seizure* sec. 6.6, p. 467 (1978).

assistance. The doctrine may not be relied upon where the entry is secured after the emergency is terminated. *State v. Pires, supra* 55 Wis.2d at 604. A warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Terry v. Ohio,* 392 U.S. 1, 25, 26 (1968).

A victim of drug overdose clearly presents an emergency of sufficient proportions to render a warrantless entry "reasonable." The defense concedes that the initial entry by Officer Weiland was legal.

The constitution would not have been violated if Officer Weiland having made a lawful entry removed contraband which was in plain view on the floor. The United States Supreme Court has recently said that "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey v. Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed.2d 290, 300 (1978).[7]

La Fournier concedes that the initial entry of Officer Weiland was valid under the emergency doctrine. La Fournier also appears to concede that the state and federal constitutions would not have been violated had Officer Weiland, before leaving with the victim, removed the syringes and spoon which were in plain view on the floor at the scene of the emergency. However La Fournier contends that the exigency justifying a warrantless entry to render aid ended at the moment that Weiland left the house with the victim and that the three officers who entered subsequently may not justify their presence with the same exigent circumstance. He says that the entry of the three officers was distinct in time and purpose from Weiland's original entry, that therefore their

---

[7] Once in a building to put out a fire the firefighters may seize evidence of arson that is in plain view. *Michigan v. Tyler,* 98 S. Ct. 1942, 1950 (1978). For a discussion of the "plain view" doctrine, *see Coolidge v. New Hampshire,* 403 U.S. 443, 465–66 (1971); *Bies v. State,* 76 Wis.2d 457, 463, 251 N.W.2d 461 (1977).

entry without a warrant was unreasonable and illegal, and that as a result his arrest and the seizure of the heroin were tainted.

The trial court, emphasizing the short time between the departure of Officer Weiland and the arrival of the other three officers, found that the entries of the four officers at different times were the "same transaction."

We uphold the conclusion of the trial court that the intrusion of the three officers was merely a continuation of Officer Weiland's lawful intrusion and that the lack of a warrant does not invalidate the discovery of the contraband, the resulting arrest, or the seizure of the heroin.

Weiland's original warrantless entry to aid the victim was lawful under the emergency rule. While aiding the victim Weiland inadvertently came across incriminating evidence in plain view on the floor. He called for assistance to secure the scene. He then left for the hospital with the victim. The three officers entered the premises within minutes after Weiland left. Indeed, one of the officers saw Weiland's squad car on its way from the house to the hospital. There was no significant period of time during which there was no police officer present at the scene.

The three officers did no more than Weiland would have been justified in doing had he remained on the premises. They entered the same area of the house in which Weiland had found the drug victim and in which the contraband was discovered in plain view. These officers were called as backup; they were completing that which was lawful under the first entry, securing evidence in plain view. They did not expand the scope or nature of the original entry.[8] Their purpose was limited to the evidence Weiland had found in plain view. That

---

[8] Additional officers or officials may enter an individual's property after one officer has already intruded legally if the later of-

evidence and La Fournier's statement that he had just shot up provided the officers with probable cause for La Fournier's arrest and the custodial search which brought to light the heroin.

Whether a subsequent entry is detached from an initial exigency and warrantless entry or is a continuation of the lawful initial entry can be determined only in light of the facts and circumstances of each case. We conclude that in the instant case the successive intrusion of Weiland and the three officers were close in time and practically identical in nature so as to be analytically and factually inseparable. The entry of the three officers must be regarded as a continuation of Weiland's initial legal entry.[9] No warrant was needed.

The instant case is distinguishable from *State v. Pires*, 55 Wis.2d 597, 201 N.W.2d 153 (1972), upon which La Fournier relies. In *Pires* the victims were removed from the bedroom and taken to the hospital by police officers. Shortly thereafter a second group of officers arrived, having reason to believe that persons in need of aid were there but not knowing that they had already been removed. We sustained the trial court's conclusion that the search by this group of officers was justified under the emergency doctrine. After discovering that the vic-

ficers confine their intrusion to scope of the original invasion. *United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir 1977); *United States v. Green*, 474 F.2d 1385, 1390 (5th Cir. 1973), *cert. den.* 414 U.S. 829 (1973).

[9] In *Michigan v. Tyler*, 436 U.S. 499, 98 S. Ct. 1942, 56 L. Ed.2d 486 (1978) fire department officers entered a building to extinguish a fire. After the fire was put out at about 4:00 a.m. they looked through the building to determine the cause of the fire. They removed two containers of flammable liquid. They returned at about 9:00 a.m. and brought in a police officer who removed pieces of carpet and stairs to preserve bits of evidence suggestive of a fuse trail. The Court held that a warrant was not necessary for the early morning re-entries which "were no more than an actual continuation of the first [entry], and the lack of a warrant thus did not invalidate the resulting seizure of evidence."

tims had been removed, these officers returned to the bedroom for another more thorough search. During this search they seized inculpatory writings. We sustained the trial court's conclusion that the emergency rationale no longer applied and that this last intrusion into the vacant dwelling in search of evidence was invalid without a warrant.[10]

This last intrusion into the bedroom cannot be justified under the emergency doctrine, for the police knew that the emergency had ended. Unlike the instant case, the evidence seized in *Pires* was not in plain view to the officers on their initial search of the premises for victims in need of aid. It was only as a result of a subsequent, more careful, deliberate search for evidence that the documents were found, read, and seized.

In summation, we hold that in the instant case an entry to locate and aid the victim required no warrant and that once on the premises the police officer could seize evidence in plain view. Where the first officer in rendering assistance to the victim could not preserve that evidence, an immediate entry by other officers without warrant, restricted in nature and scope to securing the evidence in plain view, was lawful.

■

For the foregoing reasons we conclude that the seizure of the heroin by the three officers was not the result of an illegal search, and we affirm the judgment of conviction and the order denying post-conviction relief.

*By the Court.*—Judgment and order affirmed.

---

[10] The United States Supreme Court similarly held in *Mincey v. Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed.2d 290, 302, n. 9, that a homicide did not justify a warrantless four-day search of the apartment. However the Court recognized that in rendering aid and removing bodies some evidence may permissibly be seized under established Fourth Amendment standards and remanded the case to the state court to determine to what extent, if any, the evidence found in Mincey's apartment was permissibly seized. *See also* Justice Rehnquist's concurring opinion, 437 U.S. at 405, 57 L. Ed.2d at 309.