**Richmond**

SAMUEL EDWARD HUNTER

v.

COMMONWEALTH OF VIRGINIA

No. 0776-87-2

Decided April 4, 1989

## COUNSEL

Raymond L. Palmer (Early, Palmer & Palmer, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## OPINION

**DUFF, J.**—Samuel Edward Hunter appeals his jury conviction of possession of cocaine. Hunter was also charged with the possession of marijuana. He was sentenced to twelve months in jail for the cocaine possession and acquitted of the marijuana charge. In this appeal Hunter contends that the trial court erred in admitting evidence seized pursuant to a warrantless search of his home. We affirm the conviction, finding that the search of Hunter's home was lawful.

■ "On appeal of a criminal conviction this court must view the evidence in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom." *Taitano v. Commonwealth*, 4 Va. App. 342, 345, 358 S.E.2d 590, 591 (1987).

On March 11, 1987, twenty-five to thirty police officers responded to a report of a burglary in progress at 3518 Delaware Avenue in Richmond. Upon their arrival, the police cordoned off the property. Over the next hour they heard the sounds of several gunshots come from inside the house. During this time no one entered or exited the premises. Detective Coward testified that she then observed the defendant Hunter, whom she knew, hanging outside from the upstairs window with a gun in one hand. She watched as he fell to the ground. Upon finding Hunter on the ground, C.W. Bennett, commander of the SWAT team, approached the defendant, who was lying on his back. Bennett noticed a handgun lying at Hunter's feet and that Hunter had blood and a piece of surgical tubing similar to a tourniquet on his left

arm. He also observed that Hunter's arms and both hands were swollen and covered with pustules and scars. At this point Hunter spoke to Bennett, telling him that he had called the police. Hunter also stated that the police had shot him and that there were three people with guns in his house. Bennett then directed the other police officers to hold their positions while he, another SWAT team member, and Captain Mulligan entered the residence. The three then cautiously proceeded to search any area of the home large enough to contain a person. They found no one in the house, but observed overturned furniture, bullet holes in the walls, shell casings and broken objects. In the bathroom Bennett tripped over a burgundy throw rug. He also saw gauze like material with blood stains on the floor and noticed that the medicine cabinet was open. In a room Bennett described as similar to a den, he saw a residue of white powder next to a razor blade on a coffee table.

Detective Kennedy, of the forensic unit, arrived at the scene to collect and preserve the physical evidence. As various areas of the house were cleared by the SWAT team, additional police came in to keep these areas secure. Kennedy testified that he had been told by other officers and witnesses that there had been a great number of gunshots. He therefore began searching the house for weapons, casings, bullets, and the like. In addition to finding evidence pertaining to firearms, Kennedy seized from the open medicine cabinet in the bathroom a plastic bag containing a chalky white substance. This substance was tested and found to constitute 6.02 grams of cocaine. He also seized the burgundy rug, which tested positive for traces of cocaine. In one of the two bedrooms, there was a nightstand which held pills, a pipe with foil and a clear plastic bag containing a green leaf material. The material was analyzed and found to constitute 1.36 grams of marijuana. The pipe also was analyzed and found to contain marijuana residue. Kennedy testified that he did not go into the closets or drawers, but only seized items found in open plain view.

The defendant concedes that the exigent circumstances exception to the search warrant requirement did allow the SWAT team to enter the premises to search for other suspects and to seize any evidence in their plain view during the course of the emergency. He argues, however, that the emergency situation ended when the SWAT team left the premises and that the subsequent plain view search by Detective Kennedy was unlawful without a search war-

rant. He, therefore, contends that it was reversible error to admit these items at his trial and asks that his conviction be reversed. We disagree.

 While this is a case of first impression in Virginia, many other jurisdictions have dealt with this issue. The landmark case of *Mincey v. Arizona*, 437 U.S. 385 (1978) established that no "crime scene exception" to the warrant requirment exists. However, *Mincey* recognized that in some circumstances an emergency entry could be justified under the "exigent circumstances" exception. In *La Fournier v. State*, 91 Wis.2d 61, 280 N.W.2d 746 (1979) the Supreme Court of Wisconsin stated:

> In summation, we hold that in the instant case an entry to locate and aid the victim required no warrant and that once on the premises the police officer could seize evidence in plain view. Where the first officer in rendering assistance to the victim could not preserve that evidence, an immediate entry by other officers without warrant, restricted in nature and scope to securing the evidence in plain view, was lawful.

*Id.* at ___, 280 N.W.2d at 751.

We find the facts in *La Fournier* to be analogous to the situation before us. Here, Hunter had summoned the police to his home and then told Commander Bennett at the scene that there were three armed people inside his house. This information provided a valid legal basis, conceded by the accused, for the SWAT team to enter the home and search for victims and armed persons. The SWAT team had to proceed carefully in their search and were not in the position to seize any items seen in plain view. Seizing evidence found in plain view during a search for armed suspects could have made a dangerous situation even more dangerous. Following the initial sweep, additional police officers went into the secure areas to make sure no suspects could leave the house or tamper with the scene. We conclude that the procedure did not violate the defendant's rights because the time lapse between the initial sweep and the subsequent entry was minimal and because there was no extension of the search during the second entry but merely a search of items found in plain view. The subsequent entry by Detective Kennedy was not a re-entry but a continuation of the first lawful entry by the SWAT team.

The facts in *La Fournier* are similar in that an officer (Weiland) responded to a telephone call reporting a drug overdose. Weiland arrived at the address and due to the emergency situation entered the home without a warrant. Upon finding the victim very ill in the basement, Weiland radioed the department that he was taking the victim to the hospital and that police should come to "control" the scene. Weiland acted as he did because he thought the victim might die and because he had observed drug paraphernalia, syringes and spoons on the floor. Three officers responded to the call and proceeded to the basement area where they found La Fournier in a lethargic state. They then asked him how he felt, to which he replied, "[F]ine man, I just shot up." On the floor near La Fournier were syringes and a spoon. An officer then arrested La Fournier and found three bags of heroin on his person. *Id.* at ___, 280 N.W.2d at 748-749.

La Fournier, like Hunter, conceded the legality of the first officer's entry but argued that the subsequent entry after the emergency had ended was unlawful without a warrant. La Fournier alleged that the heroin was the fruit of an illegal search and, therefore, should have been suppressed. The Wisconsin Supreme Court affirmed the trial court's holding that the short time between Weiland's departure following lawful entry and the subsequent entry of the three police officers was part of the "same transaction." The three officers did no more than Weiland could have done. "Additional officers or officials may enter an individual's property after one officer has already intruded legally if the later officers confine their intrusion to scope of the original invasion." *Id.* at ___, 280 N.W.2d at 750. For the foregoing reasons, the conviction appealed from is affirmed.

*Affirmed.*

Cole, J., and Barrow, J., concurred.