513 S.E.2d 866

**Jeffery McNAIR, s/k/a Jeffrey McNair**

v.

**COMMONWEALTH of Virginia.**

**Record No. 2717–97–2.**

Court of Appeals of Virginia,
Richmond.

April 27, 1999.

Mary Katherine Martin, Senior Assistant Public Defender (Office of the Public Defender, on brief), for appellant.

Jeffrey S. Shapiro, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON, WILLIS and LEMONS, JJ.

WILLIS, Judge.

Jeffery McNair was convicted in a bench trial for possessing cocaine in violation of Code § 18.2–250. On appeal, he contends that the trial court erred (1) in refusing to suppress evidence seized by the police during a warrantless search of his residence after he reported a robbery, and (2) in refusing to strike the evidence on the ground that it was insufficient to prove the offense. Finding no error, we affirm the conviction.

## I.

Officer William Hannum responded to a report that a robbery was in progress at McNair's apartment. McNair, who was "very upset," told Officer Hannum that he had just been robbed and that he believed the robbers were still inside his apartment. Officer Hannum remained with McNair until two other police officers arrived. Officer Hannum and several other officers then searched McNair's apartment, "mainly looking for anyone who might have done the robbery . . . or any other individuals that might need . . . assistance." During their search of the two-level apartment, which "was in somewhat of a state of disarray, of clutter," the officers entered McNair's second floor bedroom. Finding no one in the apartment, the officers returned to the first floor living room and discussed the robbery with McNair.

Detective Willie Wells arrived while Hannum and two other officers were talking to McNair in the living room area. At that time, an emergency crew was removing a victim. The detective asked Hannum whether he or the other officers had looked for clues. Without speaking to McNair about the robbery, the detective then went upstairs "specifically looking for evidence that the robbers might have dropped or left behind." In McNair's bedroom, which was in disarray, the detective noticed a glass test tube lying in plain view on the floor in the doorway to a closet. The test tube was intact, contained a white substance, and was wet on the inside. The detective testified that he recognized the tube as a type that "is commonly used to cook up small amounts of crack cocaine." When the detective questioned McNair about the test tube, McNair said that the robbers must have dropped it when they were in his bedroom. The white substance in the test tube proved to be cocaine.

The trial court convicted McNair of possession of the cocaine.

## II.

McNair contends that the test tube was discovered by the police during an unlawful search and that the trial court erred

in refusing to suppress the test tube and cocaine as evidence. Conceding that exigent circumstances existed when the officers initially arrived at his apartment, McNair argues that the exigency ceased to exist when the officers determined that the robbers were no longer present and no one needed emergency assistance and that the detective's subsequent warrantless search of the apartment violated the Fourth Amendment. Without conceding that the exigent circumstances had ended when the detective searched the bedroom, the Commonwealth argues that McNair consented to the search. Because we find that the detective's search was made with McNair's consent, we affirm the trial court's refusal to suppress the test tube and cocaine as evidence. We do not address the question of continuing exigency.

When we review a trial court's denial of a motion to suppress, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." *Commonwealth v. Grimstead*, 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In our analysis, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *McGee v. Commonwealth*, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

"[T]he fourth amendment proscribes all unreasonable searches and seizures and ' "searches conducted outside the judicial process, without prior approval of a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." ' " *Cantrell v. Commonwealth*, 7 Va. App. 269, 282, 373 S.E.2d 328, 334 (1988) (citations omitted). However, searches made by the police with the consent of a person authorized to give consent "do not implicate the fourth amendment." *Iglesias v. Commonwealth*, 7 Va.App. 93, 99, 372 S.E.2d 170, 173 (1988); *see also Payne v. Commonwealth*, 14 Va.App. 86, 88, 414 S.E.2d 869, 869–70 (1992). The Com-

monwealth must prove that, given the totality of the circumstances, the consent was freely and voluntarily given. *See Hairston v. Commonwealth,* 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975); *Commonwealth v. Rice,* 28 Va.App. 374, 378, 504 S.E.2d 877, 879 (1998). Once consent is given, the search remains lawful (1) as long as the consenting individual cooperates with the police, and (2) if the police do not exceed the scope of the consent. *See Grinton v. Commonwealth,* 14 Va.App. 846, 850–51, 419 S.E.2d 860, 862 (1992). While conducting a consensual search, the police may lawfully seize an item that they discover in plain view if they "have probable cause to believe that the item in question is evidence of a crime or contraband." *Conway v. Commonwealth,* 12 Va.App. 711, 721, 407 S.E.2d 310, 316 (1991) (*en banc*).

■ The officers responded to a report that a robbery was in progress at McNair's residence. McNair met the responding officers and informed them that the robbers could still be in his apartment. When an initial search of the residence disclosed no suspects, McNair voluntarily assisted the officers by answering questions while standing in the living room of his apartment. At no point did he attempt to restrict or terminate the officers' investigation.

When Detective Wells arrived, he asked Officer Hannum whether the officers had searched for clues to the robbery. The detective then went upstairs. McNair did not object.

From this evidence, the trial court reasonably inferred that McNair (1) consented to the officers' presence in his apartment for the purpose of investigating the robbery, (2) observed the detective go upstairs, and (3) knew that the detective was searching for clues. His failure to withdraw his consent is evidence that he consented to the detective's search. *See Lawrence v. Commonwealth,* 17 Va.App. 140, 146, 435 S.E.2d 591, 594–95 (1993), *aff'd,* 247 Va. 339, 443 S.E.2d 160 (1994); *see also Grinton,* 14 Va.App. at 851, 419 S.E.2d at 863 ("[t]he scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched").

McNair argues that the Supreme Court's ruling in *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), is controlling. We disagree. *Thompson* does not address the situation at bar, because the police had McNair's consent to search for evidence of criminal activity. Indeed, the Court in *Thompson* specifically explained that it "express[ed] no opinion as to whether the search at issue ... might [have] be[en] justified as consensual." *Id.* at 23, 105 S.Ct. 409. Therefore, *Thompson* does not control our decision.

Once valid consent is given, the police may conduct a reasonable search of a residence until the consent is unequivocally withdrawn. Any items discovered in plain view may be seized by the searching officers and may be used as evidence at trial. The trial court, therefore, correctly denied McNair's motion to suppress.

### III.

McNair next contends that the evidence was insufficient to prove that he possessed the cocaine. He argues that the evidence contained no direct proof of possession by him and that the circumstantial evidence did not exclude the reasonable hypothesis that the robbers left the test tube in his closet. We disagree.

"To establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Gillis v. Commonwealth*, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974). However, constructive possession may be proved through evidence demonstrating "that the accused was aware of both the presence and character of the substance and that it was subject to his or her dominion and control." *Wymer v. Commonwealth*, 12 Va.App. 294, 300, 403 S.E.2d 702, 706 (1991). Circumstantial evidence is sufficient to prove guilt beyond a reasonable doubt so long as "all necessary circumstances proved ... [are] consistent with guilt and inconsistent

with innocence and ... exclude every reasonable hypothesis of innocence." *Bishop v. Commonwealth,* 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). The Commonwealth "need not affirmatively disprove all theories which might negate the conclusion that the defendant ... [possessed the cocaine], but the conviction will be sustained if the evidence excludes every reasonable hypothesis of innocence." *Higginbotham v. Commonwealth,* 216 Va. 349, 353, 218 S.E.2d 534, 537 (1975).

When an appellant challenges the sufficiency of the evidence, we view the evidence "in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom." *Id.* at 352, 218 S.E.2d at 537. The test tube containing the cocaine was found at the door to McNair's closet. The detective found moisture on the inside of the test tube, a circumstance consistent with cooking crack cocaine. The detective, who had participated in executing more than one hundred search warrants, testified that in his experience, he had "never located [a test tube] on a person on the street before." Rather, such items were normally "found in homes during search warrants." This testimony supports the trial court's finding that McNair's suggestion that the robbers had left the test tube was unreasonable. Because the evidence supported no other plausible explanation as to how the test tube came to be in McNair's closet, the trial court reasonably inferred that the test tube and cocaine belonged to McNair.

Because the trial court did not err in denying McNair's motion to suppress and his motion to strike, we affirm the judgment of the trial court.

*Affirmed.*

BENTON, Judge, dissenting.

I disagree with the conclusions that Jeffrey McNair consented to Detective Wells' search of his bedroom and that the evidence was sufficient to prove that McNair possessed the cocaine.

## I.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "In a long line of cases, [the United States Supreme] Court has stressed that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " *Thompson v. Louisiana,* 469 U.S. 17, 19–20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). "The landmark case of *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) established that no 'crime scene exception' to the warrant requirement exists." *Hunter v. Commonwealth,* 8 Va.App. 81, 84, 378 S.E.2d 634, 635 (1989). *See also Thompson,* 469 U.S. at 21, 105 S.Ct. 409 (reaffirming the *Mincey* holding that creating a crime scene exception for a warrantless search " 'is inconsistent with the Fourth and Fourteenth Amendments' ").

In *Thompson,* the record established that the petitioner shot her husband and then attempted to kill herself by taking a large quantity of pills. Before she lost consciousness, however, the petitioner called her daughter, who then called the police. The responding officers searched petitioner's residence, looking for additional victims or suspects. *See* 469 U.S. at 18, 105 S.Ct. 409 This search uncovered no evidence. Later, two homicide investigators arrived and searched the residence for two hours for the purpose of finding evidence. During this search, the investigators found items which were later admitted into evidence against the petitioner at trial. *See id.* at 18–19, 105 S.Ct. 409. The Supreme Court, in a per curiam opinion, reversed the conviction and disagreed with the government's position that the petitioner, by making the call for assistance, had a "diminished expectation of privacy." *Id.* at 22, 105 S.Ct. 409. Specifically, the Court stated that the "[p]etitioner's call for help can hardly be seen as an invitation ... that would have converted her home into the sort of public place for which no warrant to search would be necessary." *Id.*

In this case, the evidence proved that when the officers initially arrived at McNair's apartment, they entered and searched the apartment to look for possible suspects and victims. At that time, McNair believed the robbers were still in the residence. McNair's suppression argument would lack merit had the cocaine been recovered during this initial search. *See Thompson,* 469 U.S. at 22, 105 S.Ct. 409. However, the cocaine was not found during the initial search. Instead, the detective found it later during a search made specifically for the purpose of finding evidence. Because the search for victims or suspects had earlier ended, no exigent circumstances then existed. *See id.* at 21–22, 105 S.Ct. 409.

When McNair informed the initial responding officers that the robbers might still be in his apartment, he did no more than consent to those officers entering his apartment for the purpose of removing the robbers and securing the premises. To assume that McNair further consented to having his residence searched a second time for clues, after the search for the robbers had terminated, would grant the government power above and beyond that which is constitutionally permitted.

We should emphasize that . . . a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Maryland v. Buie,* 494 U.S. 325, 335–36, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (footnote omitted).

When the officers made the initial warrantless search of the residence for victims and the robbers, that warrantless search was a protective activity that was " 'strictly circumscribed by the exigencies which justif[ied] its initiation.' " *Mincey,* 437 U.S. at 393, 98 S.Ct. 2408. *See also Arizona v. Hicks,* 480 U.S. 321, 325, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (noting

that the officers "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry"). The officers found no robbery suspect and had arranged for an ambulance to remove from the apartment a person who needed assistance. Thus, the police had assuaged their safety concerns during their initial search and before the detective arrived. As in *Thompson*, the following circumstance is applicable:

> Petitioner's attempt to get ... assistance does not evidence a diminished expectation of privacy on [his] part. To be sure, this action would have justified the authorities in seizing evidence under the plain-view doctrine while they were in petitioner's house to offer ... assistance. In addition, the same doctrine may justify seizure of evidence obtained in the limited "victim-or-suspect" search discussed in *Mincey*. However, the evidence at issue here was not discovered in plain view ... during the "victim-or-suspect" search that had been completed by the time [the detective] arrived. ·

*Id.* at 22, 105 S.Ct. 409. The exigency had ended because "[a]ll the persons in [McNair's] apartment had been located before the investigating [detective] arrived there and began [his] search." *Mincey*, 437 U.S. at 393, 98 S.Ct. 2408.

The Commonwealth attempts to justify the search based on consent. However, the principle "is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement." *Walls v. Commonwealth*, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986). " 'Consent to a search ... must be unequivocal, specific and intelligently given ... and it is not lightly to be inferred.' " *Elliotte v. Commonwealth*, 7 Va.App. 234, 239, 372 S.E.2d 416, 419 (1988) (citation omitted). Thus, whenever the Commonwealth alleges that a search was consensual, "[t]he [Commonwealth] ... bears the burden of establishing consent and this burden is heavier where the alleged consent is based on an implication." *Walls*, 2 Va.App. at 645, 347 S.E.2d at 178. The Common-

wealth's "burden ... is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). *See also Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

The undisputed evidence proved the detective did not ask for or receive McNair's consent to search the apartment for evidence. The detective asked the officers who had first searched the apartment whether they had looked for "clues to the robbery scene." The detective testified that he "didn't directly speak with [McNair] in regards to the robbery." Clearly, this evidence established that the detective's search was unlawful because it was based on neither lawfully obtained consent nor a search warrant. *See Thompson*, 469 U.S. at 22–23, 105 S.Ct. 409. It was an unreasonable intrusion upon McNair's privacy interest.

Furthermore, no evidence proved that McNair was aware that the detective intended to search the apartment. Although the evidence proved the detective asked Officer Hannum whether the residence had been searched, the record fails to indicate that McNair heard the question or even was aware that the detective went upstairs. Thus, the evidence fails to prove either McNair's knowledge of or acquiescence in the detective's search. Additionally, acquiescence, without more, is insufficient to prove consent. *See Crosby v. Commonwealth*, 6 Va.App. 193, 199, 367 S.E.2d 730, 734 (1988). Consent could only be found in this case by assuming facts not proved by the evidence. Such an assumption impermissibly eases the Commonwealth's heavy burden of proving consent.

Because the trial judge refused to suppress the cocaine discovered by the police in McNair's apartment during a warrantless search conducted without consent or exigency, I would reverse the trial judge's decision. Thus, I dissent from the refusal to suppress the evidence.

II.

I would also reverse the trial judge's decision on the sufficiency issue. The presence of cocaine in McNair's closet does

not *ipso facto* prove McNair possessed the cocaine. *See* Code § 18.2–250(A). "To convict a defendant of possession of an illegal narcotic drug, the Commonwealth must show that the defendant was aware of the presence and character of the drug and was intentionally and consciously in possession of it." *Hairston v. Commonwealth*, 5 Va.App. 183, 186, 360 S.E.2d 893, 895 (1987). The Commonwealth's evidence failed to prove acts or conduct from which the trial judge could infer beyond a reasonable doubt that McNair knowingly and intentionally possessed the cocaine found in the test tube on the second floor of his residence. *See id.*

McNair contacted the police after a robbery occurred in his residence. On the second floor, where the robber or robbers had been, the police observed that McNair's bedroom was in disarray. According to the detective, this evidence was consistent with one or more persons searching for something. When asked about the test tube, McNair told the police that the robbers must have left it in the apartment. Although the detective testified that he had found test tubes similar to the one found in McNair's closet when executing search warrants for drug distribution, no evidence negated the hypothesis that the robbers left the test tube as they searched the room. The police found no smoking devices in the residence or on McNair and found no other drug paraphernalia related to cocaine.

"Suspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction." *Behrens v. Commonwealth*, 3 Va.App. 131, 135, 348 S.E.2d 430, 432 (1986). Although the test tube containing cocaine was found in McNair's bedroom, McNair was not in that bedroom when the police arrived; he was outside. No evidence proved McNair was in the bedroom at any time after the robbers left and before the police discovered the test tube. McNair denied knowledge of the test tube and told the police that the test tube must have been dropped by the robbers. No testimony explained when the test tube was last used. From this evidence, it is just as likely the cocaine was last used by the robbers as by McNair.

Thus, I cannot agree that the circumstantial evidence excluded the reasonable hypothesis, proffered by McNair at trial, that the robbers left the test tube behind. The Commonwealth assumes that the robbers were in a hurry and, therefore, could not have left the test tube behind. The detective's testimony concerning the likelihood of a test tube being found on one's person is cited in support of this theory. However, the detective's testimony fails to exclude the reasonable hypothesis that the robbers were in the apartment with McNair's consent prior to the robbery. Such a hypothesis is supported by evidence that McNair reported to the police that he had been robbed. No evidence proved that the robbers had gained forceful entry into the residence. The evidence also proved that another person was in the apartment and apparently injured during the robbery. Because the evidence did not exclude the presence of the robbers in the apartment before the robbery occurred, the evidence does not exclude the hypothesis that the robbers were present long enough to use and possess the cocaine to the exclusion of McNair. Because such a reasonable hypothesis has not been eliminated by the Commonwealth, this conviction cannot stand. *See Drew v. Commonwealth,* 230 Va. 471, 338 S.E.2d 844 (1986); *Garland v. Commonwealth,* 225 Va. 182, 300 S.E.2d 783 (1983); *Burchette v. Commonwealth,* 15 Va.App. 432, 425 S.E.2d 81 (1992); *Behrens, supra.*

In this case, where the element of knowledge is based on circumstantial evidence, " 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.' " *Garland,* 225 Va. at 184, 300 S.E.2d at 784 (citation omitted). In the absence of such proof, I would hold that the evidence is insufficient to establish guilt beyond a reasonable doubt, and I would reverse the conviction.