COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Haley and Petty
Argued at Salem, Virginia


CHRISTOPHER SHAWN ROBERTSON

                                                    OPINION BY
v.        Record No. 1170-06-3        JUDGE JAMES W. HALEY, JR.
                                                    JUNE 5, 2007

COMMONWEALTH OF VIRGINIA AND
 CITY OF DANVILLE


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
David A. Melesco, Judge

Joe Garrett (Garrett & Garrett, P.C., on brief), for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellees.


Christopher Shawn Robertson (appellant) was convicted by the trial court of possessing a

firearm after having been declared delinquent while over the age of 14 for a crime that would have

been a felony if committed as an adult, in violation of Code § 18.2-308.2, and of discharging a

firearm within city limits, in violation of Danville Code § 40.3. Appellant maintains a shotgun and

spent shells admitted into evidence were the result of a search in violation of his Fourth Amendment

rights. We agree and reverse.

FACTS

On August 25, 2005, at approximately 1:00 a.m., Officer Ernest Thompson (Officer

Thompson) was dispatched to 136 West Thomas Street in Danville, in response to a 911 call. Upon

arriving at the residence, Officer Thompson interviewed appellant's girlfriend, Tiffany Cobbs

(Tiffany). Tiffany told Officer Thompson that a few hours earlier, on the afternoon of August 24,

she and appellant visited his grandfather's house. According to Tiffany, appellant consumed at least

one fifth of whiskey while at his grandfather's house. Appellant and Tiffany then had a friend drive them home to 136 West Thomas Street, where they lived together. There the couple argued over the cause of death of their son, born in December 2004, who died in January 2005.

Appellant became emotional and told Tiffany that he was going to kill himself. Tiffany stepped outside the house and called 911. While she was speaking to the operator, Tiffany testified that she heard two gunshots. Tiffany remained outside the home. When the police arrived Tiffany told Officer Thompson that appellant was alone inside the house. Several members of the Danville Police Department surrounded the residence in an extended confrontation with appellant.

A thirty-five minute video of that confrontation was admitted into evidence. The tape shows appellant, visibly intoxicated and emotional, cursing at the officers from an open front window, breaking glass panes from the window, and repeatedly denying he had killed his son. He claimed to have a shotgun in the house, but no shots were fired while the police were present. Ultimately, while appellant was sitting in the front window, police struck appellant with a taser gun. He fell to the ground where he was arrested.

Police attempted to enter the house through the front door, which was locked. Appellant told them, as had Tiffany, "Ain't nobody else in the house." Unable to obtain a key from either Tiffany or appellant, police broke down the front door and entered the dwelling. Neither Tiffany nor appellant was asked permission to enter the house, nor did they extend permission to police. The search of the home resulted in the seizure of a shotgun and spent shells, which were the subject of a motion to suppress.

During that motion, Officer Thompson confirmed for the court that "the SWAT team, they were on the scene, they did go inside to secure the house." On cross-examination, the following exchange occurred:

Q. Why do they need to secure the house if the front door is already locked and closed? He came through the window . . . he's not in the house . . . .

A. You'll have to ask them. . . . Typically, a procedure would be, even though there's one person in the house, we don't know if there's anybody else in the house and we're securing the house.

Q. You'd been talking to [Tiffany] and she told y'all there was nobody else in the house?

A. It's still part of the procedures we do.

No police officer testified that they had any belief or suspicion that anyone remained in the house following appellant's arrest.

After hearing the testimony of Officer Thompson, the trial court ruled, "It's a crime scene . . . they have a right to go into a crime scene." Appellant's counsel urged the court to reconsider, explaining that the officers "had no basis for entering the house" without a warrant. The trial judge defended his ruling, stating, "They had every reason in the world. They had . . . reports of shots fired. He admitted he fired shots. I mean, I can't think of a clearer example where the police had an absolute right to go . . . they'd be derelict if they didn't."

ANALYSIS

On appeal, we review the evidence in the light most favorable to the Commonwealth, the prevailing party below. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Appellant bears the burden to show that the denial of his motion to suppress constituted reversible error. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980). This Court is bound by the trial court's findings of fact, unless plainly wrong or without evidence to support them. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, whether those facts implicate the Fourth Amendment is a question that requires *de novo* review. Id.

- 3 -

The Fourth Amendment of the United States Constitution ensures, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." United States v. Sharpe, 470 U.S. 675, 682 (1985) (emphasis in original). See also Williams v. Commonwealth, 49 Va. App. 439, 447, 642 S.E.2d 295, 298-99 (2007).

In Kyllo v. United States, 533 U.S. 27, 31 (2001), the United States Supreme Court explained, "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." It is a well-established principle, therefore, "that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (quoting United States v. United States Dist. Court, 407 U.S. 297, 313 (1972)). See also Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005). Accordingly, seizures of personal property from a private dwelling are generally considered "unreasonable within the meaning of the Fourth Amendment unless . . . accomplished pursuant to a judicial warrant . . . ." United States v. Place, 462 U.S. 696, 701 (1983).

There are, however, exceptions to the general rule prohibiting warrantless searches. In Illinois v. McArthur, 531 U.S. 326, 330-31 (2001), for example, the Supreme Court explained:

> When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable. . . . Consequently, rather than employing a per se rule of unreasonableness, we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.

Consequently, where *exigent circumstances* justify a warrantless search of a private dwelling, an otherwise unlawful entry may be permitted. Welsh, 466 U.S. at 749-51. See also Vance v.

North Carolina, 432 F.2d 984 (4th Cir. 1970); Verez v. Comonwealth, 230 Va. 405, 337 S.E.2d 749 (1985).

For example, the Supreme Court has held that, under certain narrow circumstances, police may conduct a "protective sweep" of a private dwelling without a warrant. Maryland v. Buie, 494 U.S. 325 (1990). In Buie, the Court defined a "protective sweep" as "a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others." Id. at 327. The Court cautioned, however, that the Fourth Amendment permitted such a protective sweep *only* if "the searching officer 'possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing' that the area swept harbored an individual posing a danger to the officer or to others." Id. (quoting Michigan v. Long, 463 U.S. 1032, 1049-50 (1983)) (citations omitted).

Recently, in Williams v. Commonwealth, 49 Va. App. 439, 642 S.E.2d 295 (2007) (en banc), this Court reviewed the law governing exigent circumstances under facts relevant to those in the case at hand. In Williams, the appellant admitted that he was "heavily armed" before surrendering to police. Earlier, police had spotted an unidentifiable figure in the window of the appellant's apartment. The officers, therefore, conducted a "protective sweep and attempt[ed] to locate a handgun [they] believed was inside" and "to see if there was anyone else" inside the apartment. Id. at 445-46, 642 S.E.2d at 298. The trial court upheld the search, finding that "exigent circumstances permitted the police 'to do a protective sweep to make sure there's no one else in the apartment who has access to [the appellant's] weapon.'" Id. at 446, 642 S.E.2d at 298.

In deciding Williams, this Court sitting *en banc* conducted a comprehensive analysis of the jurisprudence surrounding exigent circumstances and protective sweeps. We relied on the

Supreme Court's analysis in <u>Buie</u>, 494 U.S. 325, and surveyed relevant holdings in cases from other federal and state jurisdictions. <u>See</u> <u>Williams</u>, 49 Va. App. at 448-51, 642 S.E.2d at 299-301. We held that the protective sweep in <u>Williams</u> was valid because the police had information indicating: 1) the presence of others inside the apartment; and 2) the presence of weapons inside the apartment. These facts gave police a "reasonable suspicion" that the apartment "harbor[ed] an individual posing a danger to the officers and others." <u>Buie</u>, 494 U.S. at 327. <u>See</u> <u>Williams</u>, 49 Va. App. at 454, 642 S.E.2d at 302.

By contrast, in the case at hand, the officers had no such information indicating the presence of another individual inside appellant's dwelling. The evidence demonstrates that Officer Thompson was told by Tiffany that appellant was alone in the house. The admitted videotape supports her statement. In the thirty-five minute tape, the camera was focused entirely on the front door and windows of the house. At no point did police appear to see or hear another individual inside the house. The tape also shows appellant yelling at the officers before they entered, "Ain't nobody else in the house!"

The instant case resembles the circumstances of <u>United States v. Colbert</u>, 76 F.3d 773 (6th Cir. 1996), cited by the dissent in <u>Williams</u>, 49 Va. App. at 463-64, 642 S.E.2d at 306-07 (Humphreys, J., dissenting). In <u>Colbert</u>, the Sixth Circuit held that a "[l]ack of information cannot provide an articulable basis upon which to justify a protective sweep." 76 F.3d at 778. The Court explained, "[A]llowing the police to justify a protective sweep on the ground that they had no information at all is directly contrary to the Supreme Court's explicit command in <u>Buie</u> that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home." <u>Id.</u>

In the case at hand, the officers similarly had no information by which they could reasonably infer that another individual could be present inside the dwelling after appellant was

- 6 -

detained outside. Moreover, on cross-examination, when asked why police needed to secure the house, Officer Thompson replied, "You'll have to ask them. . . . Typically, a procedure would be, even though there's one person in the house, we don't know if there's anybody else in the house and we're securing the house." The evidence shows, therefore, that the officers did not possess a reasonable suspicion that, after appellant's arrest, appellant's dwelling harbored an individual posing a danger to the officers or others, as required by the standard set forth in Buie.

The Commonwealth cites Verez, 230 Va. at 410-11, 337 S.E.2d at 753, to support the argument that "exigent circumstances" justified a warrantless entry. We do not find that argument persuasive. In Verez, the Supreme Court of Virginia set forth several examples of exigent circumstances:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Id. As the Verez Court noted, the Commonwealth bears "a heavy burden of proving justification by exigent circumstances." Id. at 410, 337 S.E.2d at 753. In deciding whether exigent circumstances justify a warrantless entry, a court "must examine the circumstances as they reasonably appeared to the law enforcement officers on the scene." Id. at 411, 337 S.E.2d at 753.

Initially we note that eight of the examples set forth above are predicated upon a reasonable belief that an individual is actually within the premises at the time of the entry. As

we held above, however, in the instant case there is no evidence upon which the police could have formulated such a belief. Likewise, "urgency" is not relevant, as appellant was in police custody at the time of the entry, and the front door through which the police entered was locked, necessitating their breaking it down. Finally, as the videotape shows, appellant was initially arrested for being drunk in public, which generally cannot be characterized as a serious offense, or one necessarily involving violence. Thus, we conclude the circumstances surrounding the entry were not exigent.

Moreover, the trial court was in error by concluding that police "have a right to go into a crime scene." As this Court explained in Hunter v. Commonwealth, 8 Va. App. 81, 84, 378 S.E.2d 634, 635 (1989), "The landmark case of Mincey v. Arizona, 437 U.S. 385 (1978), established that no 'crime scene exception' to the warrant requirement exists." See also Thompson v. Louisiana, 469 U.S. 17, 19-21 (1984) (reaffirming the holding in Mincey that a crime scene exception for a warrantless search "is inconsistent with the Fourth and Fourteenth Amendments").

Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings, if the Commonwealth be so advised.

Reversed and remanded.