## ·Alexandria

### ALFREDO BEHRENS

v.

### COMMONWEALTH OF VIRGINIA

No. 0235-85

Decided September 16, 1986

COUNSEL

Susan L. Korfanty (John W. Shanley, on brief), for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

## I.

KEENAN, J. — A jury found Alfredo Behrens guilty of possessing cocaine with intent to distribute in violation of Code § 18.2-248. The court sentenced Behrens in accordance with the jury's verdict to seven years in the penitentiary and a ten thousand dollar ($10,000) fine. On appeal, Behrens contends that the evidence of possession was insufficient to sustain the conviction. We agree and reverse.

At trial, the Assistant Manager of the Arna Valley Family Suites, Niles Madison, testified that on March 14, 1984, Behrens rented a suite in that establishment for a period of one week. Madison could not remember whether Behrens had any luggage with him. The registration form filled out by Behrens indicated that he lived locally in Alexandria, Virginia. No evidence was presented that Behrens ever entered the suite. An occupant of Arna Valley testified, however, that on March 20, 1984, during the week of Behrens' rental, she saw two other men enter the suite rented to Behrens.

When Behrens did not return on March 21, 1984, to pay for a second week, as he had told Madison he might, Madison went to the suite to see if it was still occupied. He testified that the suite had been used, but that he saw no luggage or clothing. The only items Madison remembered seeing in the suite were a few aerosol

cans. He testified that he then put in a work order for the suite to be cleaned and the locks changed.

Deborah Woolen, the maid who cleaned the suite on March 22, 1984, testified that the suite had been slept in and that some towels had been used. She said the only items which she found in the suite were a soda bottle and some yellow pieces of paper with numbers written on them. These items were thrown away, according to Woolen, because she had assumed that they were trash. After Woolen had cleaned the suite, it was checked by Betty Lemon, her supervisor. Lemon testified that she looked behind the dresser, which Woolen had failed to do, and saw two plastic bags on the floor. Lemon testified that when she had checked behind the dresser on March 14, 1984, after the prior tenant had departed, she had not seen the plastic bags at that time. The bags which Lemon turned over to the Arna Valley desk clerk were found to contain cocaine.

During the afternoon of March 22, 1984, Behrens returned to the Arna Valley office and asked the desk clerk, William Shipley, why he had been locked out of his suite. Shipley testified that Behrens appeared nervous, but that he calmed down upon being told that he could re-enter the suite. According to Shipley, Behrens paid an additional two days rent at that time.

While Behrens was still in the office filling out forms, Officer Broadhurst of the Arlington County police arrived in response to Shipley's earlier call concerning the discovery of the plastic bags. Broadhurst testified that when he arrived he was in plain clothes and that he showed his badge to Shipley in order to identify himself. Shipley then let Broadhurst into a back office where he explained that a maid had found two plastic bags containing an unknown substance and that Behrens was the man who had rented the suite where the bags had been found.

Broadhurst then went to his unmarked car and radioed for two uniformed officers to assist him. From his car, Broadhurst observed Behrens walk to a phone booth near the Arna Valley office and speak to a man later identified as Robert Fuentes. Broadhurst observed Behrens make a phone call, but he could not hear anything that was said. When the uniformed officers arrived, Broadhurst identified himself to Behrens and Fuentes. He told them that he had some questions about the suite and asked them

to return to the Arna Valley office. Both men complied. Detective Tamez, a narcotics detective who had also been summoned by Broadhurst, performed a field test on the substance found in the plastic bags and determined that it was cocaine. Based on this and the information provided by Broadhurst, Tamez ordered that Behrens be arrested.

While Behrens was being searched and handcuffed, Fuentes was looking out the window. Tamez testified that he thought this was very odd, so he began to question Fuentes. According to Tamez, Fuentes denied knowing Behrens and said that he was waiting for a friend whose name he could not remember. After further questioning, Tamez arrested Fuentes. Testimony was elicited at trial that Fuentes was a cocaine supplier.

Tamez testified, without objection, as an expert on drug transactions. He stated that he knew from his experience that motel rooms in the area had been used by drug dealers to conduct their business. He explained that motel rooms serve the purposes of drug dealers because they can be easily vacated in case of trouble and because buyers will not find out where the dealer lives. In this regard, Tamez testified that it was significant that Behrens had rented a suite at Arna Valley despite having a local home address. Based on his conversations with the maid, Deborah Woolen, Tamez testified that the yellow pieces of paper she had thrown out were "owe sheets."[1] These, he said, are used in drug transactions to tabulate outgoing and incoming monies. Finally, Tamez testified that the location where the cocaine had been found was not a good place to keep it for a long period of time because a nearby hot water pipe would have caused the substance to moisten, and thus lose much of its value.

## II.

The Commonwealth argues that when the facts are viewed in its favor, they establish sufficient circumstantial support for a finding that Behrens constructively possessed cocaine. The principles governing constructive possession are well settled.

---

[1] Trial counsel objected that this conclusion regarding the yellow paper was speculative. The court overruled his objection and this issue has not been raised on appeal.

To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

*Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)(quoting *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).

■ Under Code § 18.2-250, proof that contraband was found in premises owned or occupied by the defendant is insufficient, standing alone, to prove constructive possession. "Such evidence is probative, but it is only 'a circumstance which may be considered . . . along with the other evidence.' " *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)(quoting *Gillis v. Commonwealth*, 215 Va. 298, 301, 208 S.E.2d 768, 770-71 (1974)). Suspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction. *See Garland v. Commonwealth*, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983); *Wright v. Commonwealth*, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977).

In *Clodfelter v. Commonwealth*, 218 Va. 619, 238 S.E.2d 820 (1977), the Supreme Court considered facts similar to those presented here. Clodfelter had rented a hotel room where drugs were later found. Also found in the room were a knife, bracelet and hair brush belonging to Clodfelter. In addition, hair samples taken from the room were consistent with Clodfelter's hair. Upon his arrest, Clodfelter gave a false name. The Supreme Court held that "this evidence creates a strong suspicion of guilt, but it falls short of showing beyond a reasonable doubt that the drugs found in the hotel room were ever actually or constructively possessed by Clodfelter with an awareness of their character." *Id.* at 623, 238 S.E.2d at 822.

The Supreme Court also found insufficient evidence to prove constructive possession in *Drew*. There, the defendant was seen near a house where the police were executing a search warrant. The search revealed large amounts of cocaine along with certain drug paraphernalia. The search also disclosed a checkbook, bank statement, telephone bill, driver's license, vehicle registration and

credit union voucher, all in the defendant's name. These items of identification gave the targeted house as the defendant's address. Nevertheless, the Supreme Court stated: "At most, the evidence establishes that Drew resided at 3317 Knox Street and that he was near the residence the night the cocaine was seized. This is insufficient to prove constructive possession by the defendant." 230 Va. at 474, 388 S.E.2d at 846.

Turning to the facts of the present case, we find that the most the Commonwealth established was that Behrens rented a hotel suite where drugs were later found and that certain other aspects of his actions were suspicious - such as, a local home address, nervousness at being locked out, and conversation with a supplier of cocaine. These facts, however, do no more to establish constructive possession than do the facts in *Clodfelter* and *Drew*. Indeed, the evidence against the defendants in those cases was stronger than the evidence against Behrens. Here, unlike *Clodfelter* and *Drew*, there was no evidence that the defendant had ever been inside the room where the drugs were found. There was, however, evidence that two other men had been inside the suite during the week it was registered in Behrens' name.

The Commonwealth relies on *United States v. Schocket*, 753 F.2d 336 (4th Cir. 1985) to demonstrate that a defendant need not be found *inside* a hotel room in order to establish that he constructively possessed contraband found therein. We agree that there is no such requirement. However, as the *Schocket* case clearly demonstrates, something more than mere rental of the room must be shown. In *Schocket*, Drug Enforcement Administration agents entered a hotel room shortly after the defendant had left. They seized cocaine which they found on a table. Earlier in the evening, the defendant had told an undercover agent that he wanted some cocaine, and they had gone to a night club in search of some. In addition, a codefendant had stated that he was going to the defendant's room "to set up everything for free basing." *Id.* at 340. These facts were sufficient for the court to infer that Schocket knew of the presence and character of the cocaine in his hotel room. It is precisely such evidence that is missing from the present case.

The Commonwealth argues, however, that the expert testimony of Detective Tamez describing the usual practices of drug dealers provided the proof necessary to connect Behrens with the

cocaine. The Commonwealth's reliance on this testimony necessarily emanates from an assumption by Tamez that Behrens knew of the cocaine and the "owe sheets." If these facts had been established, Tamez's testimony may have been relevant to establish whether Behrens possessed and intended to distribute the cocaine. But proof that drug dealers often use motel rooms does not establish that Behrens knew of the presence and character of the cocaine or of the "owe sheets." As is frequently stated, where a conviction is based on circumstantial evidence, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence." *Garland*, 225 Va. at 184, 300 S.E.2d at 784 (quoting *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). Behrens' rental of a local motel suite, while suspicious, was not such a conclusive item of circumstantial proof that we can say it was inconsistent with innocence.

Next, the Commonwealth argues that Behrens' awareness of the cocaine may be inferred from his failure to show surprise upon being arrested. We reject this argument. Even if we were to accept the proposition that guilty knowledge may be inferred from a failure to show surprise at being arrested, the argument would fail in this case for lack of factual support. The only evidence regarding Behrens' reaction to his arrest came from Officer Broadhurst, who testified that Behrens was cooperative and made no attempt to escape. This testimony did not establish lack of surprise. The Virginia Supreme Court rejected an identical "lack of surprise" argument in *Powers*. There, the Court stated: "Detective Turner never testified that the defendant showed no surprise at the charge or that he failed to disclaim guilt. Absent such testimony, the defendant had no reason to offer evidence to show that he had proclaimed his innocence when he was arrested." 227 Va. at 476, 316 S.E.2d at 740.

Finally, the Commonwealth argues that Behrens' knowledge of the cocaine may be inferred from his having been seen with a known cocaine supplier (Fuentes) shortly before his arrest. This argument is without merit. The evidence proved only that Fuentes and Behrens had some conversation outside the Arna Valley office. There was no evidence regarding what they discussed. The conversation between Fuentes and Behrens, considered in the factual context of this case, suggests nothing more than guilt by association and cannot be considered substantive evidence in support of a

criminal conviction. *See Smith v. Commonwealth*, 217 Va. 336, 337, 228 S.E.2d 562, 563 (1976).

In summary, we find that the Commonwealth has failed to carry its burden of proving that Behrens was aware of the presence and character of the cocaine or that the cocaine was subject to his dominion and control. The judgment of conviction will, therefore, be reversed and the indictment dismissed.

*Reversed and dismissed.*

Baker, J., and Coleman, J., concurred.