COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
          Elder, Bray, Annunziata, Bumgardner, Lemons and Frank
Argued at Richmond, Virginia


JEFFERY McNAIR, S/K/A
 JEFFREY McNAIR
                                           OPINION BY
v.   Record No. 2717-97-2          JUDGE SAM W. COLEMAN III
                                          NOVEMBER 30, 1999
COMMONWEALTH OF VIRGINIA


                   UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                 Oliver A. Pollard, Jr., Judge

        Mary Katherine Martin, Senior Assistant
        Public Defender (Office of the Public
        Defender, on brief), for appellant.

        Jeffrey S. Shapiro, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     Jeffery McNair was convicted of possession of cocaine in

violation of Code § 18.2-250.  He contends the trial court erred

by denying his motion to suppress evidence obtained during a

warrantless search of his residence following an investigation of

a reported robbery.  He also contends the evidence is insufficient

to support the conviction.

     A divided panel of this Court affirmed the trial judge's

rulings, see McNair v. Commonwealth, 29 Va. App. 559, 513 S.E.2d

866 (1999), and we granted a rehearing en banc.  Upon rehearing en

banc, we hold that the trial court did not err by denying the

motion to suppress the evidence, but we find the evidence insufficient to support the conviction.  Accordingly, we vacate the panel decision, reverse McNair's conviction for possession of cocaine, and dismiss the charge.

BACKGROUND

Officer William Hannum responded to a report that a robbery was in progress at McNair's apartment.  McNair, who was "very upset," told Officer Hannum that he had just been robbed and that he believed the robbers were still inside his apartment.  Officer Hannum remained with McNair until two additional police officers arrived.  Officer Hannum and the two officers then searched McNair's apartment, "mainly looking for anyone who might have done the robbery . . . or any other individuals that might need . . . assistance."  During their search of the two-level apartment, which "was in somewhat of a state of disarray, of clutter," the officers entered McNair's second-floor bedroom.  Finding no one in the apartment, the officers returned to the first-floor living room and discussed the robbery with McNair.

Detective Willie Wells arrived while Hannum and the other officers were in the living room talking to McNair.  At that time, an emergency crew was removing a "victim" from the apartment. Detective Wells asked Hannum whether he or the other officers had looked for clues to the robbery.  Without speaking to McNair about the robbery, Wells then went upstairs "specifically looking for

- 2 -

evidence that the robbers might have dropped or left behind." In McNair's bedroom, which was in disarray, the detective noticed a glass test tube lying in plain view on the floor in the doorway to a closet. The test tube was intact, contained a white substance, and contained moisture on the inside. The detective testified that he recognized the tube as a type that "is commonly used to cook up small amounts of crack cocaine." When the detective asked McNair about the test tube, McNair replied that the robbers must have dropped it when they were in his bedroom. The white substance in the test tube proved to be cocaine. McNair was charged with possession of the cocaine.

## ANALYSIS

### Motion to Suppress

McNair argues that the test tube was seized by the police during an unlawful search of his residence and that the trial court erred by refusing to suppress the test tube and cocaine as evidence. Conceding that exigent circumstances existed when the officers initially arrived at his apartment, which would have justified their searching his apartment without a warrant, McNair argues that the exigency ceased to exist when the officers determined that the robbers were no longer present and no one needed emergency assistance. McNair argues that Detective Wells' subsequent warrantless search of the apartment was unreasonable and, therefore, violated the Fourth Amendment.

When we review a trial court's denial of a motion to suppress, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In our analysis, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment. See id.

Subject to several well established exceptions, the Fourth Amendment prohibits warrantless searches of any place or thing in which a person has a justifiable expectation of privacy. See Mincey v. Arizona, 437 U.S. 385, 390 (1978). However, searches made by the police pursuant to a valid consent do not implicate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (en banc). When relying upon consent as the justification for a search, the Commonwealth must prove, given the totality of the circumstances, that the consent was freely and voluntarily given. See Bumper v. North Carolina, 391 U.S. 543,

- 4 -

548 (1968); Hairston v. Commonwealth, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975); Commonwealth v. Rice, 28 Va. App. 374, 378, 504 S.E.2d 877, 879 (1998). "A consensual search is reasonable if the search is within the scope of the consent given." Grinton v. Commonwealth, 14 Va. App. 846, 850-51, 419 S.E.2d 860, 862 (1992). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). While conducting a consensual search, the police may lawfully seize an item that they discover in plain view if they "have probable cause to believe that the item in question is evidence of a crime or contraband." Conway v. Commonwealth, 12 Va. App. 711, 721, 407 S.E.2d 310, 316 (1991) (en banc).

Here, the officers responded to a report that a robbery was in progress at McNair's residence. McNair met the responding officers and informed them that the robbers could still be in his apartment. When an initial search of the residence disclosed no suspects, McNair voluntarily assisted the officers by answering questions while standing in the living room of his apartment. At no point did he attempt to restrict or terminate the officers' investigation of his residence, which he had requested.

When Detective Wells arrived, he asked Officer Hannum whether the officers had searched for clues to the robbery. The detective then went upstairs. McNair did not object. From this evidence, the trial court reasonably inferred that McNair (1) consented to the officers' presence in his apartment for the purpose of investigating the robbery, (2) observed the detective go upstairs, and (3) knew that the detective was searching for clues to the robbery. McNair's failure to withdraw his consent is evidence that he consented to Detective Wells' search. See Lawrence v. Commonwealth, 17 Va. App. 140, 146, 435 S.E.2d 591, 594-95 (1993), aff'd, 247 Va. 339, 443 S.E.2d 160 (1994); see also Grinton, 14 Va. App. at 851, 419 S.E.2d at 863 ("[t]he scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched").

McNair argues that the Supreme Court's ruling in Thompson v. Louisiana, 469 U.S. 17 (1984) (per curiam), is controlling. We disagree. Thompson dealt with the government's contention that a "crime scene" exception exists to the warrant requirement. In Thompson, the petitioner shot her husband and then attempted to kill herself by taking a large quantity of pills. Before she lost consciousness, she called her daughter, requesting help. The daughter contacted the police. The responding officers searched the petitioner's residence, looking for additional victims or suspects. See id. at 18. The search uncovered no evidence.

Thirty-five minutes after transporting the petitioner to the hospital and after securing the scene, two homicide investigators arrived and without obtaining a warrant, searched the residence for two hours for the purpose of securing evidence pertaining to the murder-attempted suicide investigation. See id. During this search, the investigators found items that were admitted at trial as evidence against the petitioner. See id. at 18-19. The Supreme Court reversed the murder conviction and disagreed with the Louisiana Supreme Court's finding that the petitioner, by making the call to her daughter for assistance, had a "diminished expectation of privacy" in her home. Id. at 22. The Court specifically noted that no one had given consent to search the residence. See id. at 19. The Court stated that the "[p]etitioner's call for help can hardly be seen as an invitation . . . that would have converted her home into the sort of public place for which no warrant to search would be necessary." Id. at 22. See also, Mincey, 437 U.S. 385 (no crime scene exception to the warrant requirement exists), and Flippo v. West Virginia, ___ U.S. ___ (No. 98-8770 Oct. 18, 1999).

McNair's reliance on Thompson is misplaced, because here the police had McNair's consent to search for evidence of criminal activity. In Thompson, the Court specifically explained that it "express[ed] no opinion as to whether the search at issue . . . might [have] be[en] justified as consensual." 469 U.S. at 23.

- 7 -

Here, McNair contacted the police reporting a robbery at his residence and that the robbers may still be in the home. Either expressly or implicitly, McNair consented to the officers searching his house in order to investigate the reported crime. Conversely, in Thompson, the defendant's telephone call to her daughter in no way could be construed as implied consent by Thompson to allow the police inside her residence. Furthermore, the scope of the search in Thompson is distinguishable from the search in the instant case. In Thompson, the warrantless search began thirty-five minutes after the scene had been secured and lasted two hours. The officers' search was not limited to a cursory inspection of whether an emergency situation existed, but rather, involved an extensive search which included opening Christmas card envelopes and reading discarded, torn paper in the trash can. Here, Detective Wells testified that upon entering McNair's bedroom to continue the robbery investigation that McNair had requested, he discovered the test tube in plain view. Thompson, therefore, does not control our decision.

Once valid consent is given, the police may conduct a reasonable search of a residence until the consent is unequivocally withdrawn. See Lawrence, 17 Va. App. at 146, 435 S.E.2d at 595 (recognizing that withdrawal of consent requires an "unequivocal act or statement of withdrawal"). Here, an officer reasonably could have believed that, in responding to a report of

- 8 -

a robbery in progress, the scope of the consent to search permitted a search for clues to the crime, not just for the presence of robbers. Consequently, any items of illegal contraband discovered in plain view during the consensual search may be seized by the officers and may be used as evidence at trial. See Jimeno, 500 U.S. at 251 (stating that "[t]he scope of a search is generally defined by its expressed object"). The trial court, therefore, did not err by denying McNair's motion to suppress the seized cocaine.

### Sufficiency

Next, McNair argues that the evidence was insufficient to prove he possessed the cocaine in the test tube found in his bedroom. He argues that the evidence contained no direct proof of possession by him and that the circumstantial evidence did not exclude the reasonable hypothesis that the robbers left the test tube in his closet. We agree.

"To establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974). Possession may be actual or constructive. Constructive possession may be proved through evidence demonstrating "that the accused was aware of both the presence and character of the substance and that

- 9 -

it was subject to his or her dominion and control." Wymer v. Commonwealth, 12 Va. App. 294, 300, 403 S.E.2d 702, 706 (1991). "Suspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction." Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986). "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)). Circumstantial evidence is sufficient to prove guilt beyond a reasonable doubt so long as "all necessary circumstances proved . . . [are] consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence." Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). The Commonwealth "need not affirmatively disprove all theories which might negate the conclusion that the defendant . . . [possessed the cocaine], but the conviction will be sustained if the evidence excludes every reasonable hypothesis of innocence." Higginbotham v. Commonwealth, 216 Va. 349, 353, 218 S.E.2d 534, 537 (1975).

When an appellant challenges the sufficiency of the evidence, we view the evidence "in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom."  Id. at 352, 218 S.E.2d at 537.  The Commonwealth's evidence failed to prove acts, words, or conduct by McNair or other circumstances from which the trial judge could infer beyond a reasonable doubt that McNair knowingly and intentionally possessed the cocaine found in the test tube in his second-floor bedroom.  See Hairston v. Commonwealth, 5 Va. App. 183, 186, 360 S.E.2d 893, 895 (1987).  McNair contacted the police after a robbery purportedly occurred in his residence.  On the second floor, where the robber or robbers reportedly had been, the police observed that McNair's bedroom was in disarray.  According to the detective, the disarray of the room was consistent with one or more persons having searched it for something.  When asked about the test tube, McNair expressed no awareness of it and told the police that the robbers must have left it in the apartment. He denied any knowledge of the test tube.

Although the detective testified that he had found test tubes similar to the one found in McNair's closet when executing search warrants for drug distribution, no evidence negated the hypothesis that the robbers left or dropped the test tube as they searched the room.  The police found no smoking devices in the residence or on McNair and found no other drugs or drug paraphernalia related

to cocaine. See Behrens, 3 Va. App. at 135, 348 S.E.2d at 432. Although the test tube containing cocaine was found in McNair's bedroom, no evidence other than its location tied it to McNair and the disarray in the room and report of a robbery support the view that individuals other than McNair had most recently been in the bedroom. No evidence proved McNair was in the bedroom at any time after the robbers left and before the police discovered the test tube. The fact that the detective found moisture on the inside of the test tube, a circumstance consistent with cooking crack cocaine, did not tend to prove that McNair "cooked the cocaine" rather than that the robbers had done so either before arriving or while at McNair's apartment. Although the record contains few details about the alleged robbery, the disarray in the apartment and the fact that a victim was removed support the conclusion that something untoward occurred prior to the officers' arrival. Apparently, McNair had made no complaint about a forced entry or burglary. Although the circumstances are suspicious, from this evidence, it is just as likely that the test tube containing cocaine had been used and left there by the robbers or by the "victim" as by McNair and that he had exercised no dominion and control over it. Because the circumstantial evidence does not exclude other reasonable hypotheses, as supported by the evidence, that the robbers or someone other than the defendant left the test tube behind, the evidence is insufficient to support the

- 12 -

conviction.  See Drew, 230 Va. at 473-74, 338 S.E.2d at 845-46;

Garland v. Commonwealth, 225 Va. 182, 300 S.E.2d 783 (1983);

Burchette v. Commonwealth, 15 Va. App. 432, 425 S.E.2d 81 (1992);

Behrens, 3 Va. App. 136-37, 348 S.E.2d at 433-34.

### CONCLUSION

In summary, we find that the detective's search of McNair's residence was made with McNair's consent, and we affirm the trial court's refusal to suppress the test tube and cocaine as evidence. Additionally, we find the evidence is insufficient to support the conviction for possession of cocaine.  We, therefore, vacate the panel decision, reverse McNair's conviction, and dismiss the charge.

Reversed and dismissed.

Benton, J., concurring, in part, and dissenting, in part.

I concur in the portions of the opinion styled Background and Sufficiency, and I concur in the judgment reversing the conviction and dismissing the indictment. I dissent, however, from the conclusion that Jeffrey McNair consented to Detective Wells' search of McNair's bedroom for clues to the robbery.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "In a long line of cases, [the United States Supreme] Court has stressed that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions.'" Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984) (citation omitted). "The landmark case of Mincey v. Arizona, 437 U.S. 385 (1978) established that no 'crime scene exception' to the warrant requirement exists." Hunter v. Commonwealth, 8 Va. App. 81, 84, 378 S.E.2d 634, 635 (1989). See also Thompson, 469 U.S. at 21 (reaffirming the Mincey holding that creating a crime scene exception for a warrantless search "'is inconsistent with the Fourth and Fourteenth Amendments'").

In Thompson, the record established that the petitioner shot her husband and then attempted to kill herself by taking a

- 14 -

large quantity of pills.  Before she lost consciousness, however, the petitioner called her daughter, who then called the police.  The responding officers searched petitioner's residence for additional victims or suspects.  See 469 U.S. at 18.  This search uncovered no evidence.  Later, two homicide investigators arrived and searched the residence for two hours for the purpose of finding evidence.  During this search, the investigators found items which were later admitted into evidence against the petitioner at trial.  See id. at 18-19.  The Supreme Court, in a per curiam opinion, reversed the conviction and rejected the government's contention that the petitioner, by making the call for assistance, had a "diminished expectation of privacy."  Id. at 22.  Specifically, the Court stated that the "[p]etitioner's call for help can hardly be seen as an invitation . . . that would have converted her home into the sort of public place for which no warrant to search would be necessary."  Id.

In this case, the evidence proved that when the officers initially arrived at the "set of apartments" where McNair lived, they "met . . . McNair right at the entrance of the apartments."  After McNair said "he thought that the individuals who had [committed] the robbery were still in the apartment," the officers "went down to the apartment."  The officers entered McNair's apartment and searched the apartment for possible robbers and victims.  McNair's suppression argument would lack

merit had the cocaine been recovered during this initial search. See Thompson, 469 U.S. at 22. However, the test tube containing cocaine was not found during the initial search for robbers and victims. Instead, a detective who arrived sometime later, when the exigent circumstances no longer existed, found the test tube during a search undertaken specifically for the purpose of finding evidence. See id. at 21-22.

In denying the motion to suppress, the trial judge made the following findings:

> In this case Mr. McNair called the police relative to a robbery. They go there. They're trying to make sure the place is safe. [The] . . . officer in question, [Detective] Wells, was told the robbery had involved the bedroom. He went to the bedroom and looked for clues. McNair is in the house. In plain view [, Detective Wells] sees this in the closet.
>
> I don't think this is the same pattern as your cases. So I'll overrule your motion.

The judge did not find that McNair consented to a search. The trial judge found, instead, that the entry was made "to make sure the place [was] safe." Under well established rules, such a search has limited scope.

> We should emphasize that . . . a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no

> longer than it takes to complete the arrest
> and depart the premises.

Maryland v. Buie, 494 U.S. 325, 335-36 (1990) (footnote omitted).

When the officers initially searched the residence for victims and the robbers, that warrantless search was a protective activity that was "'strictly circumscribed by the exigencies which justif[ied] its initiation.'" Mincey, 437 U.S. at 393. See also Arizona v. Hicks, 480 U.S. 321, 325 (1987) (noting that the officers "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry"). The officers who initially made the protective search found no robbery suspects and arranged for an ambulance to remove from the apartment a person who needed assistance. Thus, well before the detective arrived, the police officers had assuaged their safety concerns during their initial search for victims and robbers.

As in Thompson, the following circumstance is applicable:

> Petitioner's attempt to get . . . assistance
> does not evidence a diminished expectation
> of privacy on [his] part. To be sure, this
> action would have justified the authorities
> in seizing evidence under the plain-view
> doctrine while they were in petitioner's
> house to offer . . . assistance. In
> addition, the same doctrine may justify
> seizure of evidence obtained in the limited

- 17 -

> "victim-or-suspect" search discussed in
> Mincey. However, the evidence at issue here
> was not discovered in plain view . . .
> during the "victim-or-suspect" search that
> had been completed by the time [the
> detective] arrived.

469 U.S. at 22. The exigency clearly had ended because "[a]ll the persons in [McNair's] apartment had been located before the investigating [detective] arrived there and began [his] search." Mincey, 437 U.S. at 393.

In a recent per curiam decision, the Supreme Court again held, on facts similar to this case, that the rule announced in Mincey strictly limits the scope of a warrantless "crime scene" search. See Flippo v. West Virginia, ___ U.S. ___ (No. 98-8770, Oct. 18, 1999). The facts in Flippo are as follows:

> One night in 1996, [Flippo] and his wife
> were vacationing at a cabin in a state park.
> After [Flippo] called 911 to report that
> they had been attacked, the police arrived
> to find [Flippo] waiting outside the cabin,
> with injuries to his head and legs. After
> questioning him, an officer entered the
> building and found the body of [Flippo's]
> wife, with fatal head wounds. The officers
> closed off the area, took [Flippo] to the
> hospital, and searched the exterior and
> environs of the cabin for footprints or
> signs of forced entry. When a police
> photographer arrived at about 5:30 a.m., the
> officers reentered the building and
> proceeded to "process the crime scene."
> . . . According to the trial court, "[a]t
> the crime scene, the investigating officers
> found on a table in Cabin 13, among other
> things, a briefcase, which they, in the
> ordinary course of investigating a homicide,
> opened, wherein they found and seized
> various photographs and negatives."

- 18 -

Id. at ___. Relying on Mincey and Thompson, the Supreme Court reversed the trial judge's denial of Flippo's motion to suppress. The Court again "noted that police may make warrantless entries onto premises if they reasonably believe a person is in need of immediate aid and may make prompt warrantless searches of a homicide scene for possible other victims or a killer on the premises . . . but . . . rejected any general 'murder scene exception' as 'inconsistent with the Fourth and Fourteenth Amendments.'" Flippo, ___ U.S. at ___.

On this appeal, the Commonwealth attempts to justify the search of McNair's apartment based on consent. However, the trial judge made no finding that the search was based on McNair's consent. The principle "is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement." Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986). "'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'" Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (citation omitted). Thus, whenever the Commonwealth alleges that a search was consensual, "[t]he [Commonwealth] . . . bears the burden of establishing consent and this burden is heavier where the alleged consent is based on an implication." Walls, 2 Va. App. at 645, 347 S.E.2d at 178. The Commonwealth's "burden . . . is

not satisfied by showing a mere submission to a claim of lawful authority."  <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983); <u>see also</u> <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548-49 (1968).

The trial judge's failure to find that the search of McNair's apartment was based on consent should dispose of the Commonwealth's claim.  Although McNair informed the initial responding officers that the robbers might still be in his apartment, no evidence proved that he consented to a search. Simply put, there was no consent.

Even if McNair may be deemed to have tacitly consented to those officers entering his apartment for the purpose of removing the robbers and securing the premises, a proposition the majority assumes without the benefit of a finding by the trial judge, to assume further that McNair consented to having his residence searched a second time for clues, after the search for the robbers and victims had terminated, would grant the government power above and beyond that which is constitutionally permitted.  A search beyond the scope of the consent given is an unreasonable search.  <u>See</u> <u>Bolda v. Commonwealth</u>, 15 Va. App. 315, 319, 423 S.E.2d 204, 207 (1992).  Moreover, the Supreme Court has ruled that "[t]he scope of a search is generally defined by its expressed object."  <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991).  By indicating his fear that the robbers might still be in his apartment, McNair only sought to assist the

police in their search for the robbers. When the officers completed the search and found no robbers, they had exhausted the scope of their authority to search. "The government may not exceed the boundaries of the consent, and any evidence gathered beyond those boundaries must be excluded." United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992).

The undisputed evidence proved the detective did not ask for or receive McNair's consent to search the apartment for evidence. The detective asked the officers who had first searched the apartment whether they had looked for "clues to the robbery scene." The detective testified that he "didn't directly speak with [McNair] in regards to the robbery." When he went upstairs to make a further search, he "was just looking at the scene as a robbery scene." Cf. Mincey, 437 U.S. at 395 (holding that a warrantless search conducted pursuant to a crime "scene exception . . . is inconsistent with the Fourth and Fourteenth Amendments"). This evidence clearly established that the detective's search was unlawful because it was based on neither lawfully obtained consent nor a search warrant. See Thompson, 469 U.S. at 22-23. Thus, the search was an unreasonable violation of McNair's privacy interest.

Furthermore, no evidence proved that McNair was aware that the detective intended to search the apartment. Although the evidence proved the detective asked the other officer whether

the residence had been searched, the record fails to indicate that McNair heard the question, knew that the detective intended to go upstairs, or was aware that the detective went upstairs. Thus, the evidence does not prove either McNair's knowledge of or acquiescence in the detective's search. Moreover, acquiescence, without more, is insufficient to prove consent. See Crosby v. Commonwealth, 6 Va. App. 193, 199, 367 S.E.2d 730, 734 (1988). McNair never consented to a search of his residence. Consent could only be found in this case by assuming facts not proved by the evidence. Such an assumption impermissibly relieves the Commonwealth of its heavy burden of proving consent.

The trial judge's decision to admit as evidence the cocaine discovered by the police in McNair's apartment was error because the cocaine was found during a warrantless search conducted without consent or exigency. Thus, I dissent from the portion of the majority opinion affirming the trial judge's refusal to suppress the evidence.

I concur in the remainder of the opinion, however, and in the judgment reversing the conviction and dismissing the indictment.

Willis, J., with whom Bray, Bumgardner and Lemons, JJ., join, concurring, in part, and dissenting, in part.

I agree with the majority that the test tube containing cocaine was properly admitted into evidence. However, I would further hold that the evidence sufficiently supported McNair's conviction.

The test tube containing cocaine was found in McNair's bedroom, an area personal to him and under his dominion and control. The test tube was still moist, supporting the conclusion that it had been used recently to prepare crack cocaine. Detective Wells, who had participated in executing more than one hundred search warrants, testified that items such as the test tube were normally found in homes during the execution of search warrants and that he had "never located [such an item] on a person on the street." This testimony supports the conclusion that paraphernalia such as the test tube usually remains in the premises where they are used and that such items are not normally transported from place to place. These conclusions support the inference that the test tube belonged to the premises, McNair's apartment and bedroom, and thus to McNair and discount the supposition that it was an item transported abroad and abandoned by wandering robbers.

The alternative hypotheses of innocence required to be excluded for circumstantial evidence to prove sufficient must "flow from the evidence, and not from the imagination of

- 23 -

[defense] counsel."  <u>Fordham v. Commonwealth</u>, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).  Nothing in the evidence in this case, other than McNair's exculpatory conjecture, suggests importation, possession, use, or abandonment of the test tube by the robbers.

I would affirm the judgment of the trial court.