COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Humphreys and Felton
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                        MEMORANDUM OPINION* BY
v.      Record No. 1349-04-2            JUDGE ROSEMARIE ANNUNZIATA
                                              NOVEMBER 16, 2004

TRAEON LAVAUGH HILL


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           Cleo E. Powell, Judge

            Robert H. Anderson, III, Senior Assistant Attorney General (Jerry
            W. Kilgore, Attorney General, on brief), for appellant.

            Gregory R. Sheldon (Goodwin, Sutton & DuVal, on brief), for
            appellee.


      The Commonwealth appeals a ruling by the trial court granting Traeon Lavaugh Hill's

motion to suppress evidence obtained during a warrantless search of his hotel room.  The

Commonwealth argues that the trial court incorrectly determined that the evidence was not

obtained pursuant to a valid search incident to Hill's arrest.  For the following reasons, we

reverse.

                                    I.  Background

      Under well-established principles, we view the evidence and all reasonable inferences

that may be drawn from the evidence in a light most favorable to Hill, as the party prevailing

below.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  So

viewed, the evidence establishes that on August 28, 2003, Chesterfield County police officers

Godsey and Bunker executed a search warrant in Room 126 of the Interstate Inn.  The search

      * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

warrant was obtained on the basis of information provided by an informant that "a large quantity of marijuana" would be found in the hotel room.

When Godsey and Bunker first entered the hotel room, no one was present. Inside, they observed four "partially smoked cigars" and a plastic cup "that had a little bit of loose residue in it." The officers left the hotel but returned later that night.

Upon their return to the hotel, the officers saw a man knocking on the door of Room 126. Godsey approached the man, who informed him that he was not staying in the room but had been invited there. Godsey stood to the right of the man and witnessed someone inside the hotel room pull the curtain, look at the man who knocked, and open the door.

Godsey moved to the front of the door and noticed "a very strong odor of marijuana." The man who opened the door tried to close it, but Godsey thrust his foot into the doorway and pushed his way into the room. As he entered the room, Godsey displayed his badge and identified himself as a police officer. Once in the room, Godsey saw several bags of marijuana in plain view and noticed that the room had four occupants.

One of the occupants, Hill, went "across" the room's two double beds, picked up a "black item" that Godsey believed could be a weapon, and ran towards the bathroom. Godsey grabbed Hill and directed him to show his hands. Because Hill failed to show his hands, Godsey placed his foot on Hill's back, forced him to the ground, and handcuffed him. Hill was subdued at the foot of the second bed, described by Godsey as the bed closest to the bathroom. At the time Hill was subdued, the three other occupants of the room had either been handcuffed or were "lying prone."

After subduing Hill, Godsey searched the second bed. Godsey explained that he "went to that bed because of [Hill] grabbing an object and not knowing what it was. I wanted to make sure there were no weapons there." Godsey pulled back the sheet from the bed and discovered a

handgun and cocaine. On the floor near the side of the bed, Godsey discovered a digital scale, the black object he saw Hill grab as he ran towards the bathroom. Godsey took the handgun into his possession to ensure officer safety and placed the cocaine on top of the bed. The officer obtained a second search warrant for the room, which was based upon his discoveries, and thereafter recovered the cocaine and the digital scale.

Hill filed a motion to suppress the evidence based on Godsey's warrantless search of the room incident to Hill's arrest. Hill argued that, under Chimel v. California, 395 U.S. 752 (1969), the search incident to his arrest violated the Fourth Amendment because it was not limited to the area within his immediate control. The trial court granted the motion to suppress, ruling that

> under the facts of this case, where the gun and drugs are under the second bed [closest to the bathroom], Mr. Hill is on the floor by the first bed in handcuffs, that the items that were seized were not within his area of control and were not subject to the search incident to arrest. So, with regard to that prong the motion to suppress is granted.

This appeal followed.

## II. Analysis

In reviewing a trial court's decision on a motion to suppress, we are bound by its findings of historical fact unless they are plainly wrong. McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999). "However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Id.

### A. The Search Was Properly Confined to the Area within Hill's Immediate Control

#### 1.

We begin our analysis of the legality of the search by correcting a factual error made by the trial court. In its ruling granting the motion to suppress, the trial court found that Hill was subdued "on the floor by the first bed." Although we normally defer to the trial court's factual

findings on appeal, the finding here is not supported by any evidence. See id. Godsey testified repeatedly that he subdued and arrested Hill near the foot of the second bed. Godsey's testimony is the only evidence in the record regarding the locus of Hill's arrest. In short, no evidence supports the trial court's finding that Hill was subdued "on the floor by the first bed." Rather, the evidence supports only one conclusion: Hill was subdued and arrested at the foot of the second bed.

2.

It is not disputed in this appeal that Hill was lawfully arrested. A lawful arrest empowers the police to conduct a search of "the area 'within [the arrestee's] immediate control.'" Chimel, 395 U.S. at 763. We review *de novo* whether the facts support the trial court's legal conclusion that the search was invalid. See McNair, 31 Va. App. at 82, 521 S.E.2d at 306.

The "area within [the arrestee's] immediate control" standard originated in Chimel, where the Supreme Court considered a defendant's challenge to a police search of his entire house. In that case, the police arrested the defendant when he walked into his house. Id. at 753. "[T]he officers then looked through the entire three-bedroom house, including the attic, the garage, and a small workshop," recovering various incriminating items of evidence. Id. at 754. The Court disapproved the police rummaging, noting that "[t]here is no . . . justification . . . for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." Id. at 763. The Court determined there was "ample justification," however, "for a search of the arrestee's person and the area 'within his immediate control.'" Id. The Court concluded that "[t]he only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other." Id. at 766.

- 4 -

Relying on Chimel, we upheld the search of a hotel room incident to the defendant's arrest in Archer v. Commowealth, 26 Va. App. 1, 9, 492 S.E.2d 826, 830 (1997). In that case, the police entered the hotel room where Archer was staying and arrested him on outstanding warrants. Id. at 10, 492 S.E.2d at 830-31. After removing Archer from the hotel room, the police learned that a knife and gun were under the mattress inside. Id. at 7, 492 S.E.2d at 829. The police returned to the room, searched it, and recovered the knife and gun. Id. Because the search occurred contemporaneous to the arrest and was limited to the hotel room where the arrest took place, we held that Archer's Fourth Amendment rights were not violated. Id. at 11, 492 S.E.2d at 831.

Similarly, courts from other jurisdictions have upheld the search of a room incident to arrest where the arrest occurred in that room. See, e.g., United States v. Silva, 754 F.2d 840, 843, 847 (4th Cir. 1984) (upholding search of hotel room that recovered a bag containing incriminating evidence because "there can be no dispute that the zippered bag was in the immediately surrounding area"); People v. Hufnagel, 745 P.2d 242, 246 (Colo. 1987) (upholding search of end table near sofa where defendant was arrested because "the sofa and end table were within the defendant's immediate control"); State v. Cherry, 257 S.E.2d 551, 558 (N.C. 1979) (upholding search under rug in motel room because "[t]he nine by twelve foot motel room was an area under defendant's immediate control"); State v. Austin, 584 P.2d 853, 856 (Utah 1978) (upholding search of wastebasket in hotel room because the "search was properly confined to a limited area within the [defendant's] control").

In light of these authorities, we have little difficulty concluding that the search conducted in this case occurred within an area subject to Hill's immediate control. Hill was arrested at the foot of the second bed. The limited search of the second bed and of the area surrounding it was therefore lawful.

B. That Davis Was Handcuffed Before the Search Began Does Not Invalidate the Search

We also find that the trial court erred to the extent its decision turned on Hill's handcuffed status when the search occurred. Due to the "danger inherent in any custodial arrest[,] . . . a search incident to arrest is constitutional even if the arrestee is handcuffed prior to the search" so long as the search is contemporaneous to the arrest. Hufnagel, 745 P.2d at 246, 247-248 (relying on pronouncement from United States v. Chadwick, 433 U.S. 1, 14-15 (1977), that the "potential dangers lurking in all custodial arrests make warrantless searches of items within the 'immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved");[1] Archer, 26 Va. App. at 9, 492 S.E.2d at 830 (noting that a search of the immediately surrounding area incident to an arrest is valid "even . . . after the arrestee has been restrained, as long as the search is contemporaneous with the arrest"); see also United States v. Parra, 2 F.3d 1058, 1067 (10th Cir. 1993) (upholding search of pillow conducted after defendant was handcuffed "[a]lthough hindsight suggest[ed] [the defendant] had little chance of reaching under the . . . pillow"); United States v. Turner, 926 F.2d 883, 887-88 (9th Cir. 1991) (upholding search of room where defendant was arrested although defendant had been placed in handcuffs and removed from the room before the search was performed); United States v. Queen, 847 F.2d 346, 353-54 (7th Cir.

---

[1] The Hufnagel court further explained the rationale behind its holding:

> Arrests are necessarily tense, risky events when many things are happening at once. The difficulty of imposing an orderly chronology after the fact is apparent in this case. Police officers, who must act quickly, cannot reasonably be expected to pay attention to the exact time at which the arrestee is handcuffed and then to make an accurate guess as to how much a reviewing court will think the handcuffs restrict that particular arrestee's "lunging" distance under all the circumstances.

Hufnagel, 745 P.2d at 247.

1988) (upholding search of closet three feet from arrestee even though arrestee was in handcuffs and guarded by armed police officers); Foster v. State, 464 A.2d 986, 1001 (Md. 1983) (upholding search of nightstand even though defendant was handcuffed nearby); Cherry, 257 S.E.2d at 558 (holding that "[t]he fact that defendant was handcuffed did not affect the lawfulness of the" search incident to the arrest); People v. Fitzpatrick, 300 N.E.2d 139, 143 (N.Y. 1973) (rejecting defendant's contention that the search of the closet where he was hiding was invalid because he had been removed from the room and placed in handcuffs before the search was conducted); cf. Glasco v. Commonwealth, 257 Va. 433, 439-41, 513 S.E.2d 137, 140-42 (1999) (upholding search of automobile as valid incident to the arrest of defendant even though the defendant was detained in the back of a police cruiser and "thus arguably not in a position to seize a weapon or destroy evidence"); Albert v. Commonwealth, 2 Va. App. 734, 738-39, 347 S.E.2d 534, 536-37 (1986) (upholding search of briefcase found on the floor next to bed where defendant was arrested even though defendant was "held at gun point by three police officers").

Here, the search of the bed was contemporaneous to Hill's arrest and was therefore valid, notwithstanding the handcuffs limiting his mobility when the search was performed.

For the foregoing reasons, we reverse the decision of the trial court granting Hill's motion to suppress.

Reversed.