COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Petty and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0664-10-3                       JUDGE WILLIAM G. PETTY
                                                       SEPTEMBER 10, 2010
JEFFERY BARNETT, S/K/A
  JEFFERY THOMAS BARNETT


              FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                         Teresa M. Chafin, Judge

           Leah A. Darron, Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellant.

           T. Shea Cook for appellee.


       Prior to trial, Barnett filed a motion to suppress evidence that was seized from him when

he was arrested.  Barnett argued that his arrest occurred after a police officer entered his home

without either a search warrant or an arrest warrant and that the entry was not otherwise

reasonable under the Fourth Amendment to the United States Constitution.  The Commonwealth

argued that the officer was responding to an emergency call for assistance from Barnett's wife

and, further, that the officer had implied consent to enter the house because of the nature of the

call.  The trial court concluded that the Commonwealth failed to establish an exigent

circumstance that would permit the officer to enter the house and granted the motion to suppress.

The trial court did not expressly rule on the issue of whether Mrs. Barnett gave the officer

consent to enter.  On appeal, the Commonwealth contends (1) that the police officers'

warrantless entry was reasonable under the Fourth Amendment based on the emergency

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

doctrine,[1] and (2) that the trial court erred when it failed to consider the Commonwealth's argument that the officer had implied consent to enter the house. For the following reasons, we conclude that the trial court did not err when it held that the police officers' entry into Barnett's home was not justified by the emergency doctrine, nor did it err with respect to the issue of consent. Therefore, we affirm and remand.

I.

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). However, "[a] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review de novo on appeal." Commonwealth v. Robertson, 275 Va. 559, 563, 659 S.E.2d 321, 324 (2008) (citing several decisions of the Virginia Supreme Court, as well as Ornelas v. United States, 517 U.S. 690, 691, 699 (1996)). In reviewing such a question, "an appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. (citing additional cases).

On November 6, 2009, Sheriff's Deputy Tim Carroll responded to a 911 call reporting a "domestic assault that took place" at the home of appellee, Jeffery Barnett. Barnett's wife,

---

[1] In its questions presented, the Commonwealth suggests that the police behavior was proper based on "exigent circumstances." However, in the argument portion of its brief to this Court, as well as in its argument to the trial court, the Commonwealth more directly refers to its argument as an invocation of the "emergency doctrine." Because an emergency is regularly referred to as a type of exigency, these terms are often conflated.

Kimberly Barnett, testified that she called 911 because of an argument she had with her husband. While Deputy Carroll testified that, in his five years of experience, dealing with domestic assault cases can be dangerous, he did not provide any testimony describing the details of this particular call. Deputy Carroll went to the home and knocked on the door. A child answered, and Deputy Carroll asked the child if he could speak to Mrs. Barnett. The child told Deputy Carroll that Mrs. Barnett was in the home, and Deputy Carroll announced his presence and entered the home.

Upon entering the home, Deputy Carroll spoke to Mrs. Barnett in the kitchen. Deputy Carroll asked Mrs. Barnett where her husband was, and she informed him that her husband was in the bedroom. She also told Deputy Carroll that she no longer required police assistance. At this time a second deputy arrived and stayed with Mr. Barnett in the bedroom, engaging him in small talk. Deputy Carroll continued to talk with Mrs. Barnett to establish "what was going on," at which point Mrs. Barnett explained that Mr. Barnett had pushed her, showing redness on her chest indicative of a battery. Accordingly, Deputy Carroll placed Mr. Barnett under arrest for domestic assault and battery under Code § 18.2-57.2. Deputy Carroll then searched Mr. Barnett incident to his arrest and discovered a bullet shell casing and a container of unauthorized prescription pills. Deputy Carroll subsequently established that Mr. Barnett was a convicted felon. Therefore, Barnett was charged with being a felon in possession of ammunition and with misdemeanor unlawful possession of a controlled drug.[2]

Barnett moved to suppress the bullet shell casing and the prescription pills as fruit of the poisonous tree on the basis that the police unlawfully entered his home.[3] In opposition to that

---

[2] Pursuant to Code § 19.2-398, the Court will review the Commonwealth's appeal of the pretrial suppression order only insofar as it pertains to the felony indictment.

[3] Neither the Commonwealth's Attorney below nor the Attorney General on appeal has argued that the search incident to Barnett's arrest, predicated on the probable cause received from talking to Mrs. Barnett, revealed evidence that had "'become so attenuated as to dissipate the taint'" of any unlawful entry into the house. Fitchett v. Commonwealth, ___ Va. App. ___,

motion, the Commonwealth argued that, although the police did not have a warrant, their entry into Barnett's home was reasonable because the deputy had consent. The Commonwealth further argued that "exigent circumstances" made the entry reasonable due to an ongoing emergency. Following a hearing, the trial court granted Barnett's motion by letter opinion indicating that no exigent circumstances existed that justified the warrantless entry. The trial court never directly addressed the issue of consent, and the Commonwealth did not make any further request that it do so. This appeal followed.

II.

A. Emergency Doctrine

The Commonwealth argues that the police officers' warrantless entry was reasonable under the Fourth Amendment to the United States Constitution based on the emergency doctrine. For the following reasons, we disagree.

The Fourth Amendment prohibits police from performing "unreasonable searches and seizures," and provides that "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. Thus, "the Fourth Amendment does not forbid all searches and seizures, only unreasonable ones." Reynolds v. Commonwealth, 9 Va. App. 430, 435, 388 S.E.2d 659, 662 (1990). However, it is well settled that a search or seizure is presumptively unreasonable if it occurs inside a home without a warrant. Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (citing Groh v. Ramirez, 540 U.S. 551, 559 (2004)); Payton v. New York, 445 U.S. 573, 586 (1980). Nonetheless, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." Brigham City, 547 U.S. at 403. When the police fail to obtain a warrant, the Commonwealth bears "a heavy burden

___ S.E.2d ___ (Aug. 17, 2010) (quoting Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974)). Thus, we will assume, for purposes of this opinion, that the evidence constituted "fruit of the poisonous tree" of the unlawful entry into the house.

to justify the warrantless entry" based upon a purported exigency. Reynolds, 9 Va. App. at 436, 388 S.E.2d at 663 (citing Verez v. Commonwealth, 230 Va. 405, 410, 335 S.E.2d 749, 753 (1985)).

"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." Brigham City, 547 U.S. at 403. Commonly known as the "emergency doctrine," Reynolds, 9 Va. App. at 436, 388 S.E.2d at 663, this exception permits the police to make a warrantless entry into a home when "'they reasonably believe that a person within is in need of *immediate* aid.'" Id. (emphasis added) (quoting Mincey v. Arizona, 437 U.S. 385, 392 (1978)). Thus, police action is reasonable for Fourth Amendment purposes "'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City, 547 U.S. at 404 (emphasis in original) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).[4] "The [police] officer's subjective motivation is irrelevant." Id. (citing Bond v. United States, 529 U.S. 334, 338 n.2 (2000)).

Hence, as the United States Supreme Court held in Brigham City, courts may rely only on the objective facts known to the police at the time of the entry to determine whether the entry was reasonable under the Fourth Amendment. Id. In that case, police responded to a 3:00 a.m. call regarding a raucous party at a house. Id. at 400. When the police arrived, they heard yelling

---

[4] Before Brigham City, we similarly recognized the need to make an objective determination of the reasonableness of a warrantless search or seizure. See Hargraves v. Commonwealth, 37 Va. App. 299, 311, 557 S.E.2d 737, 742 (2002) (explaining that police may enter a home without a warrant "to render emergency aid or assistance if the police reasonably believe that such protection, aid, or assistance is needed"); Reynolds, 9 Va. App. at 437, 388 S.E.2d at 664 ("[Police] conduct in making a warrantless search must be judged by the circumstances confronting the officers at the time they act." (citing Verez, 230 Va. at 411, 337 S.E.2d at 753)). In fact, our Supreme Court has enumerated several instances where exigent circumstances might arise, and those circumstances are consistent with the later United States Supreme Court decision in Brigham City. See Verez, 230 Va. at 410-11, 337 S.E.2d at 753 (mentioning "the possibility of harm to others" and "whether the offense . . . involves violence" as circumstances that might suggest exigency, among other circumstances).

from within the house.  Id. at 401.  They walked down the driveway to investigate, and they "observed two juveniles drinking beer in the backyard."  Id.  The police entered the backyard, where they saw—through windows and a screen door—a fight in progress within the home.  Id.  According to the eyewitness testimony of the police, "four adults were attempting, with some difficulty, to restrain a juvenile."  Id.  The police then watched the juvenile break free and punch one of the adults, resulting in the adult spitting blood into a nearby sink.  Id.  The remaining adults then attempted to restrain the juvenile by "pressing him up against a refrigerator with such force that the refrigerator began moving across the floor."  Id.  After witnessing this, the police entered the home and announced their presence, which ended the altercation.  Id.

Given the significant first-hand knowledge of the police, the Supreme Court held that their entry was objectively reasonable under the Fourth Amendment.  Id. at 406.  Thus, the police officers' first-hand knowledge amply demonstrated that there was "*ongoing* violence *within* the home," which justified their entry to prevent serious injury or a threat of serious injury.  Id. at 405 (emphasis in original).  Although the party subject to the police action urged the Court to consider the subjective motivations of the police, the Court firmly rejected this argument.  Id. at 404-05.  "It . . . does not matter . . . whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence."  Id. at 405.  Accordingly, the Court reasoned that the subjective beliefs of a police officer are immaterial; ultimately, it matters only whether the objective facts before the police officer could justify a warrantless entry as reasonable based on an emergency.  Id. at 405-06.

When viewed in the light most favorable to Barnett, the prevailing party below, the record contains no objective facts to support Deputy Carroll's warrantless entry.  The record merely indicates that Deputy Carroll was dispatched to respond to a call placed by Barnett's wife regarding a domestic assault.  It does not indicate when the assault occurred or whether Barnett's

wife was in danger at the time she placed the call.[5]  Rather, the Commonwealth relied upon

Deputy Carroll's five years of experience and, based upon that experience, his opinion that

domestic disputes are often very dangerous.[6]  But, as the Supreme Court has explained, a police

officer's subjective beliefs are irrelevant in determining whether the officer's warrantless entry

into a person's home was reasonable.

Since the trial court could not rely on Deputy Carroll's belief that domestic disputes are

inherently dangerous, the trial court was left simply with a 911 call and a crime alleged to have

already occurred.  When Deputy Carroll arrived at Barnett's home, he did not hear any noises

coming from within.  Unlike what the police officers in Brigham City saw, nothing that Deputy

Carroll witnessed before he entered the home—or that he was otherwise aware of—suggested

ongoing violence or a threat of violence within the home.[7]  After hearing the evidence, the trial

court concluded that the Commonwealth had failed to carry its burden of establishing that an

emergency existed that would justify a warrantless entry of the house.  We agree and thus hold

that the trial court did not err when it ruled that Deputy Carroll's warrantless entry was not

justified under the emergency doctrine.

---

[5] The Commonwealth asked Mrs. Barnett if the reason for the call was "because of a domestic situation that occurred at [her] residence."  She responded that "[i]t was more along the lines of an argument."

[6] In his testimony before the trial court, Deputy Carroll was prepared to describe the details of the 911 call as relayed to him by the dispatcher.  However, the trial court sustained Barnett's hearsay objection, and the Commonwealth was unable to present the objective facts known to the deputy.  Had the record reflected the contents of that call, it may have better supported the Commonwealth's position.

[7] In fact, once Deputy Carroll had entered the residence, Mrs. Barnett explained to him that his assistance was no longer needed.

## B. Consent

The Commonwealth has also alleged that "the trial court erred by not addressing the issue of whether Deputy Carroll had consent to enter the home." In the trial court, and in its petition for appeal, the Commonwealth relied on our decision in McNair v. Commonwealth, 31 Va. App. 76, 521 S.E.2d 303 (1999) (en banc). There we held that a resident had impliedly consented to a police search of his home when that resident called the police and asked for assistance because a robbery had recently taken place within his home. Id. at 84-85, 521 S.E.2d at 307-08. We reasoned that an ongoing emergency within a home and a call specifically requesting assistance with respect to that emergency impliedly authorized the police to enter the home and render assistance. Id. Here, however, the trial court specifically found that the Commonwealth had failed to present sufficient facts to objectively demonstrate that an ongoing emergency existed. Therefore, since the record did not establish that the police were presented with an ongoing emergency, it follows that the police were not impliedly authorized to enter Barnett's home under our reasoning in McNair. Further, because the Commonwealth's argument regarding consent is predicated upon the existence of an emergency, the trial court's ruling that no such emergency existed obviated any need for it to specifically address the Commonwealth's consent argument.[8]

---

[8] On brief, the Commonwealth also argues that the child who answered the door consented to the police entry. This argument was not included in the petition for appeal. "Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal." McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (citing Rule 5A:12(c); Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991)). The Commonwealth never argued in its petition that the child had consented to the entry into Barnett's home; instead, it relied solely on implied consent based on an emergency. Therefore, we will not consider the argument in this appeal.

III.

For the foregoing reasons, we conclude that the trial court did not err when it ruled that there was no emergency that rendered the warrantless entry into Barnett's home reasonable under the Fourth Amendment, nor did it err with respect to the issue of consent. Therefore, we affirm and remand the case to the circuit court for proceedings consistent with the views expressed in this opinion if the Commonwealth be so advised.

<u>Affirmed and remanded.</u>